STATE v. LARRY KENSTON BOWSER.

234 N. W. 2d 890.

September 26, 1975—No. 44797.

C. *Paul Jones,* State Public Defender, and *Rosalie E. Wahl,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *William B. Randall,* County Attorney, and *Steven C. DeCoster,* Assistant County Attorney, for respondent.

Heard before Rogosheske, Peterson, and Kelly, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

Defendant appeals to this court from a judgment of conviction of three counts of aggravated robbery, the result of a jury trial in Ramsey County District Court. We affirm.

On the evening of March 14, 1973, Dennis and Mike Grady, Bernard McCauley, John Hughes, Sandra Sella, and Dave Peroceschi were gathered at an apartment at 436 Portland Avenue in St. Paul. At approximately 8:10 p. m., there was a knock on the door. Peroceschi, one the the tenants of the apartment, answered it. At the door were three men: One, who wore a blue knit cap, one who was tall and wore a long, dark-blue suede coat, and one who was short and heavy-set. The person wearing the cap asked for a Bruce Salvog, one of the tenants who was not at home at the time. He then inquired whether he could buy some marijuana and was told there was none for sale but that the three could come in to the living room and roll a couple "numbers" or

marijuana cigarettes. After about 15 or 20 minutes of smoking with some of those present in the living room, the three men left.

About 30 seconds later someone knocked or rang the doorbell and this time McCauley answered. The same three men immediately entered the apartment brandishing guns. The man with the cap was carrying a .38-caliber snub-nose revolver. The short heavy-set man also carried a .38-caliber revolver, and the tall man carried a sawed-off shotgun. Upon entering, the man with the cap said, "This is a bust. Get down on the floor." The people in the living room got on the floor, and Peroceschi and Alan Korpi, another tenant of the apartment, who were in other rooms, were brought into the living room and also told to lie down on the floor. The man with the blue cap asked several times, "Where is the dope?" All the people were patted down and the apartment searched, and money was taken from Korpi, McCauley, and Peroceschi. Some clothes and stereo equipment were also taken from the apartment. Following this encounter, which took only about three minutes, the three intruders fled and the occupants called the police.

On March 20, 1973, less than a week following the robbery, David Peroceschi positively identified defendant as the intruder with the blue cap from a series of 12 police photographs. Based on this identification, defendant was arrested about 1:30 a. m. March 21. He had a .38-caliber revolver in his possession.

Defendant relied upon an alibi defense, claiming that on March 14 he had been caring for his sister's three small children in White Bear Lake the entire day and evening, with no car or public transportation available to him.

At the close of the case for the defense, the state, in chambers, moved to introduce evidence of a prior unrelated criminal act involving the defendant in order to prove identify, as set forth in its "Spreigl" notice.[1] The notice alleged that on February 10, 1972, "Larry Kenston Bowser, aiding and being aided by an-

---

[1] State v. Spreigl, 272 Minn. 488, 139 N. W. 2d 167 (1965).

434

other, did wrongfully, unlawfully, and without the consent of Mark Irwin, the person then and there in lawful possession thereof, enter the dwelling of the said Mark Irwin, located at 109 Doty Hall, Macalester College, St. Paul, with intent then and there had and entertained by him, the said Larry Kenston Bowser, to commit therein the crime of Theft * * *."[2]

The court approved the introduction of this evidence and, after proper instructions to the jury, testimony was presented about the February 10, 1972, incident. As part of this evidence of collateral criminal conduct, the state attempted to introduce into evidence a gun which allegedly had been placed on a shelf in the dorm room by defendant. A defense objection to its introduction was sustained.

The defendant presents three issues on appeal: (1) Whether the trial court erred in admitting evidence of collateral criminal conduct; (2) whether the exhibition of inadmissible evidence in the form of a gun was prejudicial; and (3) whether the evidence was insufficient to prove beyond a reasonable doubt that defendant was guilty as charged.

■ Our past decisions have often stated the rule that evidence of other unrelated crimes allegedly involving the defendant may not be introduced into evidence against him unless it comes under one of the well-recognized exceptions. State v. Spreigl, 272 Minn. 488, 139 N. W. 2d 167 (1965); State v. Billstrom, 276 Minn. 174, 149 N. W. 2d 281 (1967). Identity is one of the exceptions. State v. Sorenson, 270 Minn. 186, 134 N. W. 2d 115 (1965); State v. Sutton, 272 Minn. 399, 138 N. W. 2d 46 (1965). The danger in the use of such evidence is that the jury may be led to believe that the defendant is prone to unlawful behavior and could be more likely to convict on the basis of the defendant's character than because he has been proved guilty of the crime charged. To guard against this real danger, in State v. Billstrom, *supra*, we adopted certain safeguards to be applied where identity is a crucial issue

[2] Defendant pleaded guilty to a lesser charge of disorderly conduct.

and an alibi is strongly relied upon by the defense.[3] All were met by the prosecution, and thus the testimony regarding the February 10, 1972, incident at Macalester College was properly admitted. Although, in fact, the state was not required to give a Spreigl notice since such notice is not necessary for prior criminal convictions, the notice given was sufficient to give defendant prior warning that the state intended to introduce the prior criminal act. The prosecutor, prior to introduction, specified that identity was the exception under which the evidence could be admitted. The jury was properly instructed as to the only purpose of the evidence. Most importantly, the state proved by clear and

[3] State v. Billstrom, 276 Minn. 174, 149 N. W. 2d 281, 282 (1967), stated: "(a) Evidence of other crimes may not be received unless there has been notice as required by State v. Spreigl, 272 Minn. 488, 496, 139 N. W. (2d) 167, 173. (Applicable to all cases tried after December 17, 1965.)

"(b) At the time the evidence is offered, the prosecutor shall specify the exception to the general exclusionary rule under which it is admissible.

"(c) If evidence of other crimes is received for purposes of identity rather than to show a common scheme or plan, there must nevertheless be some relationship in time, location, or modus operandi between the crime charged and the other offenses.

"(d) Evidence of other crimes is admissible only if the trial court finds the direct or circumstantial evidence of defendant's identity is otherwise weak or inadequate, and that it is necessary to support the state's burden of proof. It should be excluded where it is merely cumulative and a subterfuge for impugning defendant's character or for indicating to the jury that he is a proper candidate for punishment.

"(e) The evidence of defendant's participation in other crimes need not be proved beyond a reasonable doubt but must be clear and convincing.

"(f) Both at the time the evidence is received and in the final charge, the court should admonish the jury that the testimony is received for the limited purpose of establishing identity. It is the court's duty to advise the jury in unequivocal language that defendant is not being tried and may not be convicted for any offense except that charged, warning them that to convict for other offenses may result in unjust double punishment."

convincing evidence that the modus operandi between the crime charged and the prior incident was very similar.

Regarding the prior incident of February 10, 1972, Victor Wilmes testified that he and his roommate were asleep in their Macalester College dormitory room on that morning when they heard a knock on the door. When the door was opened, three males pushed their way into the room, asking for drugs and when they found none, searched the room. Wilmes testified that some money was taken from him. When Dean Johnson, Macalester security officer, came to the door, Wilmes saw one of the intruders place a .38-caliber revolver on a closet shelf. Defendant and his two companions were arrested and charged with theft. This pattern of conduct is unique and similar enough to that in the instant case to be used as a basis for identifying defendant. Both are so-called "drug ripoffs"; that is, persons claim to be interested in acquiring drugs from people who may or may not have any, and, once gaining their confidence, rob them of drugs, money, or both. The robbers' hope of success is that the victims will not report the crime since the police would become aware of the victims' dealings with or use of drugs. In the instant case, evidence of this pattern of conduct was properly used as a basis for identifying defendant as one of the persons who committed the crime charged herein.

■ Defendant contends that since the gun involved in the earlier incident was not mentioned in the Spreigl notice, it could not be introduced into evidence. While the trial court sustained an objection to its admission, the basis for the exclusion was not because admission of the gun would be a violation of Spreigl-Billstrom requirements but because of lack of proper foundation. Indeed, defense counsel's objection was specifically directed to the chain of custody of the gun, and he made no assertion that Spreigl required notice of the gun. Under these circumstances, we are inclined to agree with the state that where the Spreigl notice informs defendant of the proposed introduction of evidence of other crimes, such "evidence" can include physical in-

strumentalities seized in connection with the crime, as well as the mere fact of his participation in it.[4] The mere recitation of the prior charge should put defendant on notice that any or all evidence of the prior crime can be used to show identity. While we feel that in the future the better procedure would be for the prosecutor to specify in the pretrial Spreigl notice that the state intends to introduce certain physical evidence or, at least, to inform the court and opposing counsel prior to its introduction, the rules of Spreigl-Billstrom do not require this. In any event, we hold that defendant would not have been prejudiced or denied a fair trial if it had been error to admit the gun used in the February 10, 1972, theft into evidence, especially in light of the overwhelming evidence supporting the jury's verdict. In addition, the testimony showed that the defendant had a .38-caliber revolver at the time of the robbery and had that type of gun on his person at the time of his arrest. This gun was introduced into evidence at the trial so that the appearance of one more gun should not have been inflammatory.

■ The burden carried by defendant in overturning the jury's verdict is a heavy one:

"In passing upon the weight and sufficiency of the evidence we can only repeat that the scope of our review is limited to ascertaining whether under the evidence contained in the record the jury could reasonably find the accused guilty of the offense charged. If the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that defendant was proven guilty of the offense charged, a reviewing court will not disturb its verdict." State v. Thompson, 273 Minn. 1, 36, 139 N. W. 2d 490, 515 (1966), certiorari denied, 385 U. S. 817, 87 S. Ct. 39, 17 L. ed. 2d 56.

---

[4] See, State v. Evans, 169 N. W. 2d 200 (Iowa 1969), where oil company charge slips, which themselves were physical evidence of an unrelated criminal act, were admitted in prosecution for a robbery in which the credit card used in making the charged purchases had been taken.

Defendant alleges that there is a reasonable doubt as to his identification by various witnesses. Bernard McCauley testified that defendant was one of the three men who entered the apartment on March 14, 1973, that he had 18 to 20 minutes to observe defendant's uncovered face; and that the gun held by defendant was comparable to the gun introduced as being the one found on defendant when arrested. McCauley positively identified defendant one week following the incident and at trial. Sandra Sella testified that she had 15 to 20 minutes in which to observe defendant and that he was wearing a blue knit cap. She also said that she had picked defendant's photo out of 300 police mug shots shown to her. Finally, David Peroceschi testified that when he answered the door and shook hands with defendant, he got a good look at his face and clothing. He picked defendant's photo out of 10 or 12 police mug shots shown him one week after the robbery and made a positive identification at the lineup on March 21. He also made an in-court identification of defendant at trial. The evidence was more than adequate to sustain the jury's verdict.

Affirmed.