STATE of Minnesota, Respondent,

v.

Michael James BROUILLETTE, Appellant.

No. 49101.

Supreme Court of Minnesota.

Oct. 26, 1979.

Rehearing Denied Nov. 27, 1979.

Thomson & Nordby and Jack S. Nordby, Joseph G. Brown, St. Paul, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., Norman B. Coleman, Jr., Spec. Asst. Atty. Gen., St. Paul, Roger Van Heel, County Atty., St. Cloud, for respondent.

Heard before SHERAN, C. J., WAHL and KENNEDY, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

Defendant Michael Brouillette appeals from a judgment of conviction entered in Stearns County District Court after a jury found him guilty of criminal sexual conduct in the fourth degree in violation of Minn. Stat. § 609.345(c) (1978). We affirm.

On February 1, 1977, the complainant, a 19-year-old woman student, wearing a knee-length T-shirt with an "AWB" emblem on it, entered the bathroom on the second floor of Holes Hall,[1] her residence at St. Cloud State University, between 3:40 and 3:45 a. m. When she emerged from the bathroom stall, she discovered defendant standing in front of a mirror "fussing" with his hair. She was startled and angry to see a man in the bathroom and yelled, "What are you doing in here?" He replied that he thought he was on the fifth floor, which is occupied by men, and asked her the same question.[2] She told him it was a women's bathroom and that he should leave. Defendant approached complainant, removed a cigarette from her hand, pointed to her chest, touched the emblem, and stated, "I really like that ass on your T-shirt."[3] He grasped her shoulders, turned her around, lifted her T-shirt, and touched her buttocks, saying, "I really like your ass too." He then grabbed her shoulders again, turned her around, and touched her groin area.

Complainant yelled at defendant to leave and tried to move away from him but was hindered by a broken toe. Defendant was standing between her and the door. Although defendant never threatened her, complainant testified that she was afraid that he would harm her. When she began yelling, defendant ran from the bathroom. Complainant followed him and met the assistant director of the dormitory, Steven

---

1. Holes Hall is a coeducational dormitory. Alternate floors are occupied by members of the same sex; the second and fourth floors are occupied by women.

2. At approximately 2 a. m. that same morning defendant was observed standing in the doorway of a bathroom on the fourth floor of Holes Hall. When challenged by a female resident of that floor, he stated that he thought he was on the fifth floor and that the elevator must have stopped at the wrong floor. This resident

spoke with defendant again at 2:30 a. m. for 25 minutes in the activity room on the fourth floor, and defendant told her his name. Another resident of the fourth floor spoke with defendant for 20 minutes in the fourth floor hallway shortly after 2 a. m. that morning.

3. The "W" on the emblem was in the shape of a woman's buttocks. The AWB stands for "Average White Band."

Bell, who lived on the second floor and had heard her screams. After hearing her story, Mr. Bell and the night attendant searched unsuccessfully for the assailant.

On February 16, 1977, complainant was shown a display of six photographs, including two photographs of defendant, and immediately identified defendant as her assailant. Defendant was arrested on May 12, 1977, and charged in district court on May 18, 1977. He was released on his own recognizance pending trial. At the omnibus hearing on February 13, 1978, defendant challenged the identification procedures and moved for dismissal on the ground that his right to a speedy trial had been violated. The motion was denied, and the case was tried to a jury on February 13 and 14, 1978. At the close of the state's case, the trial court denied defendant's motion for a judgment of acquittal which was made on the ground that the state had not proven force, a necessary element of the crime. The district court also ruled that if defendant testified, the state could use his prior conviction for criminal sexual conduct in the third degree[4] for impeachment. Defendant did not testify or present any evidence at trial. After deliberating for less than an hour, the jury found defendant guilty as charged. Defendant's motion for a new trial due to insufficient evidence, unnecessarily suggestive photographic display, and incorrect evidentiary rulings was denied.

The following issues are raised by this appeal:

(1) Was the evidence sufficient to support the jury verdict?

(2) Was defendant denied his right to a speedy trial?

(3) Were the pretrial identification procedures impermissibly suggestive?

(4) Did the trial court err by ruling that defendant's prior conviction was admissible for impeachment purposes?

(5) Were the trial court's comments and instructions, when read as a whole, improper so as to deprive defendant of a fair trial?

■ 1. Our review of the sufficiency of the evidence in a criminal case is limited to ascertaining whether, under the evidence contained in the record, the jury could reasonably find defendant guilty of the offense charged. In making this determination, we view the evidence in the light most favorable to the state and assume that the jury believed the state's witnesses and disbelieved contradicting testimony. *E. g., State v. Hawkins*, 260 N.W.2d 150 (Minn.1977); *State v. Bowser*, 305 Minn. 431, 234 N.W.2d 890 (1975).

■ Criminal sexual conduct in the fourth degree is proscribed by Minn.Stat. § 609.345(c) (1978), which reads, in relevant part, as follows:

> A person is guilty of criminal sexual conduct in the fourth degree * * * if he engages in sexual contact with another person and if * * * [t]he actor uses force or coercion to accomplish the sexual contact.

Defendant contends there is insufficient evidence of force or coercion to find him guilty under § 609.345(c). We cannot agree. The term "force" is defined in Minn.Stat. § 609.341, subd. 3 (1978), as including the "commission or threat by the actor of an assault, as defined in section 609.22 * * *." An assault is committed under Minn.Stat. § 609.22 (1978), when a person:

> (1) Does an act with intent to cause fear in another of immediate bodily harm or death; or

> (2) Intentionally inflicts or attempts to inflict bodily harm upon another.

**4.** On November 15, 1976, defendant entered a negotiated plea of guilty to third-degree criminal sexual conduct, Minn.Stat. § 609.344 (1978), after being initially charged with criminal sexual conduct in the first degree, Minn. Stat. § 609.342 (1978). He was sentenced to the Commissioner of Corrections and placed on probation for three years, with a provision that he serve the first six months in the Washington County Jail. Eight days after he was released from the county jail, having served 125 days (which included time spent at St. Peter State Hospital), he was involved in the present charge of criminal sexual conduct in the fourth degree, Minn.Stat. § 609.345(c).

At the time of the incident giving rise to this case, the complainant was dressed only in an undershirt, intending to use the restroom prior to retiring for the night. As she exited from a bathroom stall she was shocked to see a man in the women's bathroom. The complainant testified that defendant grabbed her forcefully by the shoulders, twirled her around, and grabbed her in the buttocks and vaginal area. She was fearful that "anything could happen" and specifically stated that she was afraid defendant might hurt her. This testimony establishes a reasonable basis for the jury to find that defendant acted with the force required by § 609.345(c).

■ 2. Defendant asserts that he was denied his constitutional right to a speedy trial because there was an 11-month delay between the complaint and the trial.[5] To determine whether a defendant has been denied a speedy trial, we must balance four factors: (1) the length of the delay; (2) the reason for the delay; (3) whether defendant asserted his right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *State v. Corarito*, 268 N.W.2d 79 (Minn.1978).

■ The delay in this case was sufficient to trigger an inquiry, but that delay alone did not establish a violation of defendant's right to a speedy trial. *See, State v. Corarito, supra; State v. Enebak*, 272 N.W.2d 27 (Minn.1978). The only explanation the state offered was the resignation of two successive public defenders and defendant's failure to assert his right. Such a reason weighs against the state, but not as heavily as if there had been a deliberate delay to hamper the defense or harass the defendant. The fact that defendant never requested a speedy trial may have been due

to the resignation of the public defenders, but he might not have demanded an immediate trial, had he been represented by the same counsel throughout the pretrial period, because he was released pending trial. Thus, his failure to demand a trial does not weigh heavily on either side of the balance.[6] Finally, there is no showing that defendant was prejudiced by the delay. None of the witnesses who testified displayed any lack of memory. Defense counsel vigorously cross-examined each witness and, thus, had an opportunity to establish any memory lapses or uncertainties. Balancing these four factors, we find no violation of defendant's right to a speedy trial.

■ 3. Defendant contends that complainant's identification of him at trial should have been excluded because the procedures leading to the identification were unnecessarily suggestive. Complainant was shown a display of six photographs, two of which were of defendant. The display was unnecessarily suggestive because defendant's photograph was the only one in color, it was the only one from Washington County, and it appeared twice. *See, Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). The trial court did not err, however, in permitting complainant to identify defendant in court. Even though the unnecessarily suggestive photographic display may have created a likelihood of misidentification, here, as in *State v. Sickels*, 275 N.W.2d 809 (Minn.1979), the record before us does not show the requisite substantial likelihood of irreparable misidentification. *See, Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *State v. Moose*, 266 N.W.2d 521 (Minn.1978). Complainant saw her assailant for two or three

---

5. Defendant's right to a speedy trial does not attach until he becomes an "accused," which may occur at indictment, charging, or upon arrest. *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Defendant was arrested on May 12, 1977, and charged in district court on May 18, 1977. There was thus a 9-month delay between arrest and trial.

6. Rule 11.10, Minnesota Rules of Criminal Procedure, provides in part:

"On demand made in writing or orally on the record by the prosecuting attorney or the defendant, the trial shall be commenced within sixty (60) days from the date of the demand unless good cause is shown by the prosecution or the defendant why he should not be brought to trial within that period."

minutes in a well-lighted room. She was face-to-face with him at less than arm's length most of that time. She gave the police an accurate and detailed description soon after the occurrence and repeated that description at trial. Only two weeks elapsed between the crime and the photographic display; and upon seeing the photographs, she selected defendant's photograph immediately and was very certain of her choice. It also appears in the record that shortly before the incident in question, defendant had given his name to a woman he talked to on another floor of Holes Hall.

4. Defendant's next claim relates to the trial court's ruling that defendant's prior conviction for criminal sexual conduct in the third degree was admissible for impeachment purposes. A motion was made during the omnibus hearing to preclude the introduction of this prior conviction should defendant take the stand in his own defense. The matter was then taken under advisement. At the close of the state's case, the trial court ruled that the prior conviction would be admissible.

Defendant rested his case without presenting any evidence. There is no way of knowing whether defendant would have testified regardless of the trial court's ruling, or what his testimony would have been had he taken the stand. No offer of proof was made by defendant, nor does the record contain the presentence investigation for even a hindsight judgment.[7] Assuming, however, that the court's ruling significantly affected the manner in which defendant presented his case, the salient question becomes whether the court was correct in determining that the probative value of the prior conviction outweighed its prejudicial effect under Rule 609(a) of the Rules of Evidence.[8]

Of course, we must sustain this evidentiary ruling of the trial court unless a clear abuse of discretion is shown. See, e. g., State v. Jones, 271 N.W.2d 534 (Minn. 1978). In arguing that the trial court exceeded its discretionary authority, the defendant alleges that the prior conviction in question here does not involve any element of truth or veracity and, thus, is not probative of credibility. We are unpersuaded by this contention. Just because a crime is not directly related to truth or falsity does not mean that evidence of the conviction has no impeachment value. Indeed, in St. Paul v. DiBucci, 304 Minn. 97, 100, 229 N.W.2d 507, 508 (1975), this court acknowledged that impeachment by prior crime aids the jury by allowing it "to see 'the whole person' and thus to judge better the truth of his testimony." This principle was expanded upon by another court as follows:

> The object of a trial is not solely to surround an accused with legal safeguards but also to discover the truth. What a person is often determines whether he should be believed. When a defendant voluntarily testifies in a criminal case, he asks the jury to accept his word. No sufficient reason appears why the jury should not be informed what sort of person is asking them to take his word. In transactions of everyday life this is probably the first thing that they would wish to know. * * * Lack of trustworthiness may be evinced by his abiding and repeated contempt for laws which he is legally and morally bound to obey * * though the violations are not concerned solely with crimes involving "dishonesty and false statement."

State v. Duke, 100 N.H. 292, 293, 123 A.2d 745, 746 (1956). See, also, State v. Ross, 295

---

7. Both counsel at oral argument assumed that the record contained this report. The state suggested that from the story defendant gave during this presentence investigation it would seem apparent that for strategic reasons he would not have taken the stand.

8. Rule 609(a) provides: "For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect, or (2) involved dishonesty or false statement, regardless of the punishment."

N.C. 488, 246 S.E.2d 780 (1978); *State v. Cote*, 108 N.H. 290, 235 A.2d 111 (1967). In addition, defendant's position is inconsistent with the policy manifested by the adoption of Rule 609. That rule clearly sanctions the use of felonies which are not directly related to truth or falsity for purposes of impeachment, and thus necessarily recognizes that a prior conviction, though not specifically involving veracity, is nevertheless probative of credibility.[9] Therefore, contrary to defendant's contention, evidence of defendant's prior crime was probative of his truthfulness. The fact that the crime was recently committed enhances its probative value. Further, defendant's credibility would undoubtedly be an essential factor in the case.

The danger of this evidence having an unfairly prejudicial effect is, most assuredly, of great concern. However, defendant fails to recognize that a cautionary instruction would presumably have been given which directs the jury to consider the prior conviction only as it relates to defendant's credibility. *See*, CRIM JIG 3.12. Such an instruction adequately protects defendant against the possibility that the jury would convict him on the basis of his character rather than his guilt. *See, e. g., Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); *State v. Ruzicka*, 89 Wash.2d 217, 570 P.2d 1208 (1977). Accordingly, based on the foregoing, we believe that the trial judge's decision is reasonable and thus he did not abuse his discretion in ruling that evidence of defendant's prior conviction was admissible.

5. Finally, defendant challenges certain comments and instructions of the trial court. Specifically he refers to three different times the trial judge mentioned that the function of the jury was to determine defendant's "guilt or innocence," and the three verdict forms which stated: "We the jury impaneled and sworn to try the guilt or innocence of the above-named defendant

* * *." Also, defendant cites as error other comments of the trial court, including that the defense could postpone its opening statement until "before they introduce evidence"; that they (prosecution and defense) "will proceed to present their evidence"; and that the attorneys "have the duty and obligation to present all the evidence they have to support the claims of their clients."

 Essentially, defendant argues that these statements of the trial judge had the effect of implying that defendant had the burden of proving his own innocence. Defendant, however, did not object to these unintentional misstatements and, consequently, he may not raise the issue on appeal. *State v. Billington*, 241 Minn. 418, 63 N.W.2d 387 (1954). As we stated in *Billington, supra* :

> The rule is well settled that when a charge as a whole is substantially correct but in some particulars is verbally inaccurate or contains obviously unintentional misstatements, which it is fair to assume the court would have corrected had the matter been called to its attention, it is the duty of counsel to bring the matter to the attention of the court in a timely and proper manner, and if he fails to do so he waives the right to later on object either on a motion for a new trial or on appeal.

241 Minn. 427, 63 N.W.2d 392 (footnote omitted).

 But more fundamentally, when the trial court's instructions are viewed in their entirety, as they must be, *e. g., State v. Billington, supra*, it is clear that the jury was not misled or confused as to the proper presumption of innocence. The record discloses that the trial court on two occasions correctly instructed the jury on the presumption of innocence and that the state had the burden of proving defendant's guilt beyond a reasonable doubt. Thus, even though we disapprove of the trial judge's comments, when the instructions are read

---

**9.** The Comment to Rule 609 provides that the trial court may, in its discretion, admit "serious crimes, which do not directly involve dishonesty or false statement * * *," if the probative value outweighs the conviction's prejudicial effect. If felonies unrelated to truth or veracity had no probative value as to credibility, Rule 609 certainly would not have given a trial court the authority to admit these crimes into evidence.

as a whole it is apparent that reversal of defendant's conviction on this ground is unjustified.[10]

Affirmed.

WAHL, Justice (dissenting).

I must respectfully dissent. The trial court's ruling that defendant's prior conviction for criminal sexual conduct was admissible for impeachment purposes, coupled with the trial court's improper comments and instructions, so prejudiced defendant as to require, in my opinion, reversal and a new trial.

*City of St. Paul v. DiBucci*, 304 Minn. 97, 100, 229 N.W.2d 507, 508 (1975), cited by the majority, recognized but refused to extend the principle that impeachment by a prior crime may allow the jury to see "the whole person" where the jury is properly cautioned that the evidence may be used only as it relates to the defendant's credibility. *DiBucci* was decided before the promulgation of Minnesota Rules of Evidence. Under Rule 609, the trial court may allow the introduction of a prior conviction such as this one only if it determines that the probative value of such evidence outweighs its prejudicial effect. In making this determination the court must consider: (1) the impeachment value of the prior crime; (2) the date of the conviction and defendant's subsequent history; (3) the similarity of the past crime with the charged crime; (4) the importance of defendant's testimony; and (5) the centrality of the credibility issue. *State v. Jones*, 271 N.W.2d 534 (Minn.1978).

Although felonies unrelated to truth or veracity may have some probative value as to credibility, in the instant case the impeachment value of the prior crime was negligible. Criminal sexual conduct in the third degree does not involve any element of veracity and, thus, is not probative of credibility. The more similar the crime, the greater the likelihood of prejudice, because the jury is likely to convict on the basis of character rather than guilt. See, *State v. Bowser*, 305 Minn. 431, 234 N.W.2d 890 (1975). Defendant's conviction was for a very similar crime, i. e., criminal sexual conduct in the third degree. The fact that it was a recent conviction enhanced its prejudicial effect as much, if not more, than its probative value.

Defendant's testimony and the centrality of the credibility issue might have been critical. Defendant did not testify, however, because the trial court ruled that his prior conviction was admissible for impeachment. Because the probative value of this conviction was so slight and its prejudicial effect so great, I would find this evidentiary ruling reversible error, particularly when coupled, as in this case, with the trial court's comments and instructions, which suggested that defendant must bring in evidence to establish his innocence.[1]

Prior to counsel's opening statements, the trial court told the jury that:

> * * * after the county attorney's opening statement the attorney for the defendant has the option to make an opening statement at that time or wait until the state has rested and before they introduce evidence. After the opening statements they will proceed to present their evidence through the testimony of

---

10. Similarly, contrary to defendant's assertions, our recent decision in *State v. Tibbetts*, 281 N.W.2d 499 (Minn.1979), does not require reversal of defendant's conviction. In *Tibbetts*, the trial court, in defining "sexual contact" incorporated into his instructions the "can reasonably be construed as being" language contained in Minn.Stat. § 609.341, subd. 11 (1978). We held that the use of this language violated due process because the defendant could be convicted in the absence of all facts being proven beyond a reasonable doubt. In this case, the trial judge did not include in his jury instructions the language we found so offensive in

*Tibbetts*. Accordingly, we reject defendant's contention.

1. The majority notes that defendant did not object to the trial court's "unintentional misstatements." However, this court has demonstrated its willingness to review errors in jury instructions, despite a lack of objection, when those errors involve fundamental law or controlling principles and they substantially and materially prejudice defendant. *State v. Hembd*, 305 Minn. 120, 232 N.W.2d 872 (1975); *State v. Keaton*, 258 Minn. 359, 104 N.W.2d 650 (1960).

witnesses that they will call and the introduction of certain exhibits that they feel may be helpful to the jury in reaching its decision * * *. After all the evidence is in and both parties have rested the attorneys will make what is commonly referred to as closing arguments or a summation the purpose of which is to sum up the evidence that they offered * * *.

After both sides rested, the court again instructed the jury that the attorneys "have the duty and obligation to present all the evidence they have to support the claims of their clients * * *."[2] When the jury returned to ask for further evidence, the court emphasized that they could only consider evidence "that the *attorneys* bring into court, either the prosecution or the defense." (Emphasis added.) The trial court told the jury three times that it was to determine defendant's "guilt or innocence." In addition, all three verdict forms stated: "We the jury impaneled and sworn to try the guilt or innocence of the above-named defendant * * *."

I believe that the combined effect of these comments and instructions was to imply that defendant had the burden of proving his innocence.[3] In a criminal trial the defendant is presumed innocent and has no duty to produce witnesses or present evidence. Nor does he have a duty to testify on his own behalf, and neither the court nor the prosecutor may allude to his failure to testify. Minn.Stat. §§ 611.02, 611.11; *State v. White*, 295 Minn. 217, 203 N.W.2d 852 (1973).

Because the trial court erred in ruling to admit defendant's prior conviction and because the trial court's comments and instructions to the jury were improper, I would reverse and remand the case for a new trial.

2. Although this instruction is identical to CRIMJIG 3.11, Minnesota Criminal Jury Instruction Guide, we believe that the phrase "[It is his duty] to present all the evidence * * * to support the claims of [his] client," while appropriate in a civil case, should be omitted in a criminal case. See, 10 Minnesota Practice, Criminal Jury Instruction Guides, CRIMJIG 3.11.

OTIS, Justice (dissenting).

I concur in the dissent of Justice WAHL.

ROGOSHESKE, Justice (dissenting).

I join in the dissent of Justice WAHL.

3. Compare *United States v. Rosa*, 493 F.2d 1191 (2nd Cir. 1974), where the reference to proof of guilt or innocence was found erroneous but clearly corrected by other "flawless" instructions.