**Michael James BROUILLETTE,
Appellant,**

v.

**Warden Frank W. WOOD; Attorney
General of State of Minnesota,
Warren Spannaus, Appellees.**

**No. 80–1603.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 12, 1980.

Decided Dec. 12, 1980.

Kenneth W. Saffold, Sp. Asst. Atty. Gen., St. Paul, Minn., for appellees.

Jack S. Nordby, Minneapolis, Minn., for appellant.

Before GIBSON, Senior Circuit Judge, and HEANEY and BRIGHT, Circuit Judges.

HEANEY, Circuit Judge.

## I

This is an appeal from an order of the United States District Court for the District of Minnesota denying the petitioner relief under 28 U.S.C. § 2254. We affirm the order of the district court.

The petitioner was charged with criminal sexual conduct in the fourth degree, Minn. Stat. § 609.345(c), on March 3, 1977. The charge arose out of an incident that occurred on the St. Cloud State University campus. On February 1, 1977, at 2:00 a. m., the petitioner was observed standing at the doorway of the "women's" restroom on the fourth floor of Holes Hall.[1] A female student questioned his presence on the floor and he responded that he thought he was on the fifth floor, the male residents' floor. Within a half–hour, the same woman and a female friend encountered the petitioner in the activity room of Holes Hall. They engaged in conversation for approximately twenty–five minutes.

Between 3:40 and 3:45 that same morning, Marietta McCulloch, a nineteen–year–old freshman student, was preparing for bed. She was coming out of one of the bathroom stalls when she discovered the petitioner arranging his hair at the mirror. His presence startled her so that she angrily yelled, "What are you doing in here?" He said that he thought he was on the fifth floor. She told him he was on a women's floor and instructed him to leave.

Ms. McCulloch was wearing only a knee–length "T" shirt which was inscribed with the logo of a rock and roll band, the Average White Band. The logo consisted simply of the initials "AWB"; the "W" was shaped in the form of a buttocks. The petitioner walked up to her, touched the logo on her chest and said, "I really like that ass on your 'T' shirt." Then he grabbed her by the shoulders, spun her around and grabbed her

---

1. Holes Hall is a coeducational dormitory. The second and fourth floors of the Hall house women students.

buttocks, saying, "I really like your ass too." Then he grabbed her shoulders, spinning her so that she faced him again and touched her groin area. Ms. McCulloch began to scream and push away. The petitioner then ran. The assistant director of the dormitory, Steven Bell, who resided on the second floor, heard the screams and came to Ms. McCulloch's aid. After McCulloch described the petitioner and the course of events to Mr. Bell, he sought the help of the night attendant and unsuccessfully searched for the assailant.

Ms. McCulloch identified the petitioner as her assailant by photographs shown to her on February 16, 1977. The petitioner was arrested on May 12, 1977. An omnibus hearing was convened on February 13, 1978, where several defense motions were raised and denied. On February 13 and 14, 1978, the petitioner was tried and convicted. His motion for a new trial was denied and he appealed his conviction to the Minnesota Supreme Court; the conviction was affirmed. *State v. Brouillette*, 286 N.W.2d 702 (Minn.1979).

On January 25, 1980, the petitioner filed an application for a writ of habeas corpus, 28 U.S.C. § 2254. In his petition, he raised the identical claims presented to the Minnesota Supreme Court in his direct appeal:

(1) Was the evidence sufficient to support the jury verdict?

(2) Were certain instructions and comments of the trial court, when taken as a whole, so improper that the petitioner failed to secure due process?

(3) Was the petitioner denied his right to a speedy trial?

(4) Were the pretrial identification procedures impermissibly suggestive?

(5) Was it error for the trial court to determine petitioner's prior conviction would be admissible for impeachment purposes?

See *State v. Brouillette, supra,* 286 N.W.2d at 705.

## II

Our consideration of the petitioner's claim challenging the sufficiency of the evidence is governed by *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The Supreme Court held there that such a challenge is cognizable as a federal constitutional claim under 28 U.S.C. § 2254. The Court, however, limited habeas corpus relief to those cases in which the record shows that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia, supra,* 443 U.S. at 324, 99 S.Ct. at 2792. *Jackson v. Virginia* also instructs that a state appellate court judgment rejecting a challenge to evidentiary sufficiency is entitled to great deference by the federal courts. *Id.* at 323 & n.15, 99 S.Ct. at 2791 n.15; see *Davis v. Campbell*, 608 F.2d 317, 319–320 (8th Cir. 1979).

■ The petitioner's basic claim is that there is no record evidence that would establish that the sexual conduct was accomplished with force. Our independent review of the record indicates to us that the petitioner's presence in the women's restroom at 3:30 a. m., the physical grabbing and twirling of the victim, in conjunction with his statement to her that he "really like[d] her ass too" was sufficient to satisfy the statutory requirement of force.[2] Accordingly, we determine that rational triers of fact could have found proof beyond a reasonable doubt that the petitioner touched Ms. McCulloch with force. The record discloses that rational triers of fact could have found the petitioner guilty of criminal sexual conduct in the fourth degree. Minn.Stat. § 609.345(c).

■ It is true that, as a general rule, improper jury instructions do not form a

---

**2.** "Force" is defined at Minn.Stat. § 609.341 subd. 3. The statute provides:

"Force" means the infliction, attempted infliction, or threatened infliction by the actor of bodily harm or commission or threat of any other crime by the actor against the

complainant or another, which causes the complainant to reasonably believe that the actor has the present ability to execute the threat, and also caused the complainant to submit.

*Id.*

basis for habeas corpus relief. *Davis v. Campbell, supra,* 608 F.2d at 319.[3] However, when the petitioner establishes that an improper instruction resulted in a "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure," habeas corpus relief is available, *DeBerry v. Wolff,* 513 F.2d 1336, 1338–1339 (8th Cir. 1975) (quoting *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)), even if the petitioner fails to timely object at trial. *See Henderson v. Kibbe,* 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977).

■ The petitioner also challenges certain remarks of the trial judge and a jury instruction. This claim was properly submitted before the Minnesota Supreme Court where it was discussed and rejected on the basis of its merit. *State v. Brouillette, supra,* 286 N.W.2d at 708–709. The petitioner's argument is that the trial judge's opening remarks to the jury and his response to a question raised by the jury in deliberation, in conjunction with the three verdict forms submitted to the jury, tended to shift the burden of proof to the petitioner to prove his innocence. We agree with the Minnesota Court that when the remarks of the trial judge and all the instructions are taken as a whole, there is no question but that the burden of proving guilt beyond a reasonable doubt was shouldered by the state, and the jury properly deliberated with this mandate firmly in mind.

The petitioner also challenges the following instruction as having had the effect of requiring the defendant to produce any and all evidence he had to establish his innocence:

> [Counsel] have the duty and obligation to present all the evidence they have to support the claims of their clients and to make such objections as they deem proper and to argue fully their clients' cause.

We agree with the petitioner that this language, even though based on Minnesota Jury Instruction Guide, Crim.J.I.G. 3.11 (1977), is improper and that, in another case, it could very well mean the difference between conviction and acquittal. The model instruction provides:

> An attorney is an officer of the court. It is his duty to present evidence on behalf of his client, to make such objections as he deems proper, and to argue fully his client's cause. However, the arguments or other remarks of an attorney are not evidence in this case.
>
> If an attorney has made, or if I have made or should make, any statement as to what the evidence is, which differs from your recollection of the evidence, then you should disregard the statement and rely solely on your own memory. If an attorney's argument contains any statement of the law, which differs from the law which I give you, you should disregard his statement.

*Id.*

When the instruction is read as a whole, it is apparent that it is simply a cautionary instruction. It informs the jury that a lawyer, in the heat of a trial, may misstate the evidence or the law. This instruction cautions the jury that it is the lawyer's job to *produce* the evidence, and that they should not be overly concerned by counsels' personal summation of the evidence produced. It further cautions the jury not to hold any misstatements against the defendant for the reason that the defense counsel is simply doing his job, *i. e.,* arguing fully his client's cause.

■ We believe that the instruction will better serve its intended purpose if the language referring to the lawyer's obligation to present evidence is heretofore stricken in the criminal law context. It very well could have the effect of suggesting that the defendant must produce all evidence he possesses to establish innocence.

---

3. In *Davis v. Campbell,* 608 F.2d 317, 319 (8th Cir. 1979), this Court simply opined that claimed errors in instructions to the jury do not *usually* raise constitutional questions of the magnitude required for habeas corpus relief.

We did not rule there that in every case challenging an instruction habeas corpus relief is improper. *Id. See also DeBerry v. Wolff,* 513 F.2d 1336, 1338–1339 (8th Cir. 1975).

■ Notwithstanding the fact that the instruction was improper, we agree with the Minnesota Supreme Court that the instructions when read as a whole did not tend to shift the burden of proof to the defendant to establish innocence. Accordingly, we can find no error so fundamental as to raise a cognizable due process issue.

The petitioner's remaining challenges were all appropriately addressed by the Minnesota Supreme Court. After a review of the entire file and all proceedings, we can find no fundamental error raising a cognizable due process violation. The order of the district court denying the petitioner's habeas corpus relief is affirmed.