**STATE of Minnesota, Respondent,**

v.

**Ricky John KVALE, Appellant.**

**No. 51382.**

Supreme Court of Minnesota.

Feb. 20, 1981.

C. Paul Jones, Public Defender, and Mark F. Anderson, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Gary Hansen and Kenneth W. Saffold, Sp. Asst., St. Paul, Thomas L. Johnson, County Atty., Minneapolis, for respondent.

SHERAN, Chief Justice.

Defendant was found guilty by a district court jury of a charge of aggravated robbery, Minn.Stat. § 609.245 (1980), and the trial court stayed imposition of sentence and placed defendant on probation for five years, with the first year to be served in jail. On this appeal from judgment of conviction defendant contends that the evidence of his guilt of aggravated robbery was legally insufficient, that the trial court erred in denying a motion to prohibit use of a prior aggravated robbery conviction if defendant testified, and that the trial court erred in refusing a requested modification of the standard CRIMJIG instructions on the definition and elements of aggravated robbery. We affirm.

Defendant, accompanied by two acquaintances, one male and one female, spent the evening of November 19, 1979, inside a south Minneapolis neighborhood bar drinking beer and playing pool. Shortly after the bar closed and as defendant was preparing to drive away, he backed his car into the victim's car, causing bumper damage to the victim's car. Defendant and the victim, who had also been in the bar that night, disagreed over whether the damage to the bumper was pre-existing. Finally, defendant, who apparently was inebriated and did not want the police called, paid the victim $10 in complete settlement of the damages.

The victim waited until after the defendant and his companions left and then he drove home. As he drove down the alley behind his house and prepared to park his car, he saw defendant and his companions, with their car lights off, drive behind him. Defendant and his companions got out, ran up to the victim, who remained in his car, and began "raving" that they had not damaged the bumper, and demanded that the victim return the $10. One of defendant's companions pounded on the victim's car window so hard that the car shook. Feeling that he had no choice and fearing for his safety, the victim reached into his pocket and removed all his bills, specifically the $10 that defendant had paid him and the $7 or $8 that he had had before defendant had paid him. Defendant immediately grabbed it all and handed it to the woman who was with him. The victim, who was "scared to death," asked them to take defendant's money and leave. Defendant told the woman to take the $10 and give back the rest to the victim, but she replied, "Don't give him any money," and in fact none was given back. Defendant then began ordering the victim to "say I didn't hurt your car." When the victim, who was still seated in his car, said that he could not say that because it was not true, defendant became more furious and hit him on the head. Defendant then grabbed the victim's hair and held his head with one hand and, using some object which the victim did not see, cut the victim's throat.

When the blood started to flow, the victim, concluding that he was in serious trouble and had to take action rather than acquiesce in what was happening, forced himself free and ran for help. Defendant and the others then drove away fast.

Defendant was located because the bartender of the bar had memorized his license number. Both the victim and the bartender positively identified defendant. Defendant's two accomplices were never identified or located by the police.

1. Defendant's main contention, that the evidence of his guilt of aggravated

robbery was legally insufficient, deals not with identity but with whether aggravated robbery or even robbery was proven. Specifically, defendant argues that there was not even sufficient evidence that this was a robbery, because the state did not prove either that defendant knew he was not entitled to the money or that force was used to facilitate the taking. Defendant contends that the evidence established only a taking which did not amount to a robbery, followed by an unrelated assault, which did not facilitate the taking.

Minn.Stat. § 609.24 (1980) defines simple robbery as follows:

> Whoever, knowing he is not entitled thereto, takes personal property from the person or in the presence of another and uses or threatens the imminent use of force against any person to overcome his resistance or powers of resistance to, or to compel acquiescence in, the taking or carrying away of the property is guilty of robbery and may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $10,-000, or both.

Minn.Stat. § 609.245 (1980) provides:

> Whoever, while committing a robbery, is armed with a dangerous weapon or inflicts bodily harm upon another is guilty of aggravated robbery and may be sentenced to imprisonment for not more than 20 years or to payment of a fine of not more than $20,000, or both.

It is clear to us that defendant, once having voluntarily settled with the victim and given him the $10, was not entitled to use self-help to get the money back from the victim. Whether defendant knew he was not entitled to take the $10 back is not as clear but, at the very least, that was a jury question. It cannot be said as a matter of law that defendant did not know he was not entitled to the $10. Beyond this, defendant did not just take $10; rather, he took all the money the victim had. And while it is true that he told the woman with him to give all but the $10 back to the victim, he did not do anything to insure that she did after she indicated she did not want to. Instead, when she said no, he began to physically attack the victim. This act, under the circumstances, destroyed the possibility that the victim would get any of the money back and facilitated the carrying away of all of the money, not just the $10.

Defendant's argument that the evidence did not show the use of force or fear to facilitate the taking cannot be accepted. The evidence showed that defendant and his companions intentionally created in the victim a reasonable apprehension of imminent violence which compelled his acquiescence in the taking of his money from his person. This case is therefore distinguishable in this respect from *State v. Moore*, 295 N.W.2d 101 (Minn.1980).

In arguing that his infliction of bodily harm on the victim was unconnected with the taking, defendant is basically arguing that before one can be convicted of either robbery by using actual force or aggravated robbery involving infliction of bodily harm the force or injury must precede or be simultaneous with the taking. In making this argument, defendant points to the Advisory Committee Comment to Minn.Stat. § 609.24 (1980). The comment states that the statute defining robbery prior to 1963 had specified that use of force in escaping would not constitute robbery and that this language was deleted in the new statute because it was "considered unnecessary." Defendant reads this comment to mean that the force or injury must precede or accompany the act of taking and that it is not enough if the force or injury facilitates the carrying away of the property.

We believe that defendant misreads the comment. Prior to 1963, the statute defining robbery had stated that one of the elements of robbery was use of force or fear to obtain or retain possession of property. The statute went on to say that if the force was used "merely as a means of escape," that would not constitute robbery. What the Advisory Committee Comment meant was that it was not necessary to reiterate that the use of force in escaping only was insufficient to constitute robbery because it is clear from the statute that one

must do more than merely use force to escape with stolen property to commit robbery.

Focusing on the actual statutory requirements, we are satisfied that defendant committed aggravated robbery. In order to elevate a simple robbery to aggravated robbery, the statute requires only that, while committing a robbery, the defendant either be armed with a dangerous weapon or inflict bodily harm. Here, while defendant was already guilty of robbery once he used the threat of force to compel the victim's acquiescence in the taking, that fact does not mean that any infliction of bodily harm which followed the taking could not be used to elevate the offense to aggravated robbery. The robbery statute speaks of using force or threats to compel acquiescence in either the taking or the carrying away of the property. It does not require that the use of force or threats actually precede or accompany the taking. It requires only that the use of force or threats precede or accompany either the taking or the carrying away and that the force or threats be used to overcome the victim's resistance or compel his acquiescence in the taking or carrying away. Here the threats of force preceded the taking and the use of force—in the infliction of bodily harm—overcame the victim's power to resist and compelled his acquiescence both in the completed taking and in the contemporaneous carrying away of the money.

2–3. Defendant's other two contentions do not merit detailed discussion.

█ Employing the analysis recommended in *State v. Jones*, 271 N.W.2d 534, 538 (Minn.1978), we conclude that the trial court did not clearly abuse its discretion in permitting the impeachment, and accordingly we must sustain the trial court's ruling. *See State v. Brouillette*, 286 N.W.2d 702, 707–8 (Minn.1979).

█ Defendant's contention that the trial court prejudicially erred in denying a requested modification of the standard Minnesota jury instructions, CRIMJIG, on the definition and elements of aggravated rob-

bery is not borne out by our examination of the record. We are satisfied that the jury, after listening to the arguments and the instructions in question, fully understood what were the elements of aggravated robbery.

Affirmed.

WAHL, Justice (dissenting).

I must respectfully dissent. Defendants in criminal cases have a statutory and constitutional right to testify in their own behalf. Minn.Stat. § 611.11 (1978); *State v. Rosillo*, 281 N.W.2d 877 (Minn.1979). In a case such as this, where inconsistencies in the complainant's testimony raised grave doubts as to whether the defendant committed anything other than assault and where even the trial judge expressed the opinion that it was a very close issue as to whether or not this was an aggravated robbery, it was imperative that the jury hear the defendant's version of the incident. The defendant did not take the stand, however, because the court refused to limit the impeachment use of his prior conviction for aggravated robbery, a crime identical to the one for which he was on trial. The potential use of this prior conviction had a chilling effect upon defendant's exercise of his right to testify in his own behalf.

Defendant's apprehension of inherent prejudice is well founded. An empirical study of the jury system at the University of Chicago Law School resulted in a finding that, all other things being equal, the use of prior convictions for impeachment resulted in a 27 percent increase in the conviction rate. Note, *Admissibility of Prior Convictions to Impeach a Defendant-Witness*, 15 S.D.L.Rev. 161, 162 (1970), *citing* Kalven & Zeisel, *The American Jury* 160–61 (1966).

Defendant's prior aggravated robbery conviction is not a crime involving untruthful conduct so as to be automatically admissible under Minn.R.Evid. 609(a)(2). It is admissible into evidence, if at all, under Minn.R.Evid. 609(a)(1) only if the trial court properly determines that its probative value outweighs its prejudicial effect. That determination must be guided by factors set

out by this court in *State v. Jones*, 271 N.W.2d 534, 538 (Minn.1978): the impeachment value of the prior crime; the date of the conviction and the defendant's subsequent history; the similarity of the past crime with the charged crime; the importance of the defendant's testimony; and the centrality of the credibility issue. Applying these factors, I conclude that the impeachment value of this five-year-old conviction for an identical crime was minimal, the need for defendant's testimony critical.

The trial court erred in ruling that the probative value of the prior conviction for aggravated robbery outweighed its prejudicial effect. I would reverse the conviction and grant a new trial.

OTIS, Justice (dissenting).

I join in the dissent of Justice Wahl.