STATE of Minnesota, Respondent,

v.

Thomas R. WARE, Appellant,

STATE of Minnesota, Respondent,

v.

Thomas Raymond WARE, Appellant.

Nos. 51231, 51176.

Supreme Court of Minnesota.

June 12, 1981.

C. Paul Jones, Public Defender and Susan
Maki, Asst. Public Defender, Minneapolis,
for appellant.

Warren Spannaus, Atty. Gen., Gary Han-
sen and Richard D. Hodsdon, Sp. Asst. At-
tys. Gen., St. Paul, R. Scott Ballou, County
Atty., Chaska, for respondent.

SCOTT, Justice.

Defendant committed offenses against
two different victims, a 58-year-old woman,
and her 14-year-old granddaughter, in a
single behavioral incident in Carver County.
Defendant was charged with three counts
arising out of his assault on the grandmoth-
er (attempted first degree murder, criminal
sexual conduct in the first degree, and ag-
gravated assault involving infliction of
great bodily harm) and two counts for his
assault on the granddaughter (criminal sex-
ual conduct in the second degree and aggra-
vated assault involving use of a dangerous
weapon). Defendant entered guilty pleas
to the two sex charges and the two aggra-
vated assault charges but those pleas were
withdrawn. Because of prejudicial publici-
ty of defendant's incriminating testimony
at the hearing on those pleas, defendant
was given a change of venue. The first
trial, on the charges involving the assault of
the grandmother, was held in Sibley County
before a different judge than the one who
had accepted the guilty pleas. The defend-
ant was found guilty only of the charge of
aggravated assault. Defendant's second
trial, on the charges involving the assault of
the granddaughter, was held in Dakota
County, before a third judge. The jury
found defendant guilty of criminal sexual
conduct in the second degree and simple
assault. The judge who presided at the
first trial sentenced defendant to ten years,
a $5,000 fine, and restitution for the grand-
mother's medical expenses; the judge who
presided at the second trial sentenced de-
fendant under the dangerous offender law
to a consecutive enhanced maximum term
of 30 years instead of the 15 normally im-
posed for criminal sexual conduct in the
second degree.

Issues raised by defendant on these com-
bined appeals which relate solely to the
judgment of conviction for the sexual as-
sault on the granddaughter are the suffi-
ciency of the evidence that defendant com-
mitted criminal sexual conduct in the
second degree and the correctness of evi-
dentiary rulings by the trial court refusing
to allow defense counsel to ask certain
questions on cross-examining the grand-
mother and denying a defense motion to
prohibit use of one of defendant's prior
convictions to impeach him if he testified.
Issues which relate to both appeals are
whether defendant is entitled to a reduction
in his sentence and whether defendant was
denied his right to a speedy trial. We af-
firm.

1. Defendant's contention that all
his convictions should be vacated because

his right to a speedy trial was violated is meritless. The criminal conduct occurred on March 8, the trials in October. The case was ready to go to trial at the end of May, when defendant entered his guilty pleas. There was a delay of about three months caused by a presentence examination at St. Peter; defendant impliedly consented to that delay. The first trial began just over one month after defendant withdrew his pleas. The second trial began shortly thereafter. Defendant has failed to show any prejudice.

■ 2. Defendant's second contention is that his conviction for criminal sexual conduct in the second degree, which was based on his attack on the granddaughter, should be reversed outright on the ground that the evidence was legally insufficient. No useful purpose would be served by summarizing the evidence in any detail. Suffice it to say, our examination of the record satisfies us that the evidence was sufficient.

3. Defendant's next contention—that at least he should be given a new trial on the charge of criminal sexual conduct in the second degree—is based on claims of trial error at the second trial. Specifically, he points to (a) the refusal of the court to permit defense counsel to cross-examine the grandmother about the contents of a conversation defendant had with her before he started his assaultive conduct, and (b) the court's refusal to prohibit use of a Missouri kidnapping conviction to impeach defendant if he testified.

■ (a) The cross-examination of the grandmother concerning the content of the conversation was properly permitted at the first trial, the one relating to defendant's attack on her, because there was an issue of what was the reason for defendant's assaultive conduct against her—was it sexual in motivation or self defense?—and the content of the conversation was relevant to that. At the second trial, however, the content of the conversation was not really put in issue; indeed, the state did not even question the grandmother about defendant's sexual attack on her, only about the events which involved the granddaughter.

Whatever the motive for defendant's attack on the grandmother, it had no great bearing on his attack on the granddaughter, and the trial court's reasoning apparently was that the potential of the evidence for unfair prejudice substantially outweighed any limited probative value which it might have. We do not believe that the trial court's ruling was erroneous and, beyond that, it was clearly not prejudicial.

■ (b) Defendant's contention concerning the ruling on the use of his recent Missouri kidnapping conviction for impeachment purposes is answered by recent decisions of this court giving trial courts considerable discretion under Minn.R.Evid. 609 to permit impeachment in analogous circumstances. Although defendant has a long list of felony convictions going back to the early 1960's, apparently only two of them were committed in the last ten years, one a federal offense in 1973 for interstate transportation of a firearm and the recent Missouri conviction for kidnapping. If anything, the more recent conviction was more relevant, but defendant's contention at trial was that it was proper to admit the 1973 one for impeachment purposes but not the most recent one for kidnapping. We believe that under *State v. Brouilette*, 286 N.W.2d 702 (Minn.1979), *State v. Jones*, 271 N.W.2d 534 (Minn.1978), and other cases, the trial court did not err in its ruling. In any event, even if there was error it was nonprejudicial because defendant's credibility, if he had testified, would have been impeached by the 1973 conviction even if the trial court had prohibited use of the kidnapping conviction. *State v. Kinyon*, 302 N.W.2d 27 (Minn.1981).

■ 4. Defendant's final contention is that at least he should receive some sentencing relief. This contention is based on the following facts.

On May 31, 1979, defendant entered guilty pleas to the two sex charges and the two assault charges. In his testimony defendant admitted these offenses. A memorandum signed by the trial court set forth the court's understanding of the conditions

which defendant attached to his plea. Specifically, defendant agreed that he would accept consecutive prison terms of eight years and five years for the sex offenses and concurrent prison terms of ten years and five years for the assault convictions. Defendant also agreed that if after a presentence investigation the state sought enhanced sentencing under the dangerous offender law the court could double the 13 years (eight and five), making defendant subject to 26 years, if the dangerous offender law applied. Defendant reserved the right to withdraw his plea, however, if the trial court decided to increase the basic terms agreed to in any other way (as by sentencing defendant to consecutive maximum terms of 20 years and 15 years for the sex offenses).

At the sentencing hearing the state told the court that it could not rely on the dangerous offender law because one of the two prior convictions within ten years could not be relied upon since it was a Missouri conviction and was not deemed a final conviction in that state since sentence had not yet been finally imposed. The judge then said that he felt that he had to impose a greater sentence than the consecutive terms of eight and five years and that he would have relied on the dangerous offender law if he could have. Since he could not do that he implied that he was ready to simply impose a greater basic maximum sentence for each of the sex offenses but he reminded defendant that he had reserved the right to withdraw his pleas in this situation. Defendant relied on this reserved right and withdrew his pleas.

Defendant now relies on two theories. First, he argues that the court erred in concluding that the dangerous offender law was inapplicable and that therefore he should be permitted to have the benefit of the bargain, in other words, the 26 years he would have received if the court had not erred. Alternatively, he argues that the state should have been estopped from seeking an enhanced sentence after trial, because the state's position was inconsistent with the position the state had earlier taken when it prevented defendant from getting the 26 year term.

We are not persuaded by the "benefit of the bargain" theory advanced by defendant. Defendant agreed beforehand that if the court decided that it could not rely on the dangerous offender law, then defendant would have the option of either withdrawing his pleas or allowing the court to increase the basic prison terms. The court did not violate any agreement or understanding but made a good faith determination that the dangerous offender law did not apply. If defendant had wished to have the benefit of the negotiated agreement he should not have exercised his right to withdraw his pleas. Once he did this, he took his chances on what might happen in the trial process.

Similarly, we are unpersuaded by the argument that the prosecutor should have been estopped from seeking an enhanced sentence after trial. All the prosecutor was doing at the sentencing hearing on the guilty pleas was expressing his belief, based on his research at that time, that the dangerous offender law did not apply. While the position was inconsistent with the position that the prosecutor would later take after the trials, we see no ground for invocation of the estoppel doctrine. Defendant, by withdrawing his pleas, surrendered his rights under the agreement and took his chances on the trial process.

Affirmed.