**STATE of Minnesota, Respondent,**

v.

**William Henry BROWN, Appellant.**

No. C5–98–1423.

Court of Appeals of Minnesota.

July 13, 1999.

Review Denied Sept. 14, 1999.

Mike Hatch, Attorney General, St. Paul; and Amy J. Klobuchar, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, for respondent.

John M. Stuart, State Public Defender, Susan K. Maki, Assistant Public Defender, Minneapolis, for appellant.

Considered and decided by SHORT, Presiding Judge, PETERSON, Judge, and SHUMAKER, Judge.

## OPINION

PETERSON, Judge

On appeal from convictions and sentences for first-degree aggravated robbery and second-degree assault, William Henry Brown argues that (1) the evidence was not sufficient to support the conviction for aggravated robbery; (2) if the aggravated robbery conviction is affirmed, the second-degree assault conviction must be vacated as a lesser-included offense of the aggravated robbery; (3) because the aggravated robbery and the assault were parts of a

single behavioral incident, the court should not have imposed a sentence for the assault; and (4) the court had no authority to order him to submit to an HIV test. In a pro se brief, Brown argues that he was denied effective assistance of counsel and was entitled to appointment of substitute counsel. The state moved to strike documents included in Brown's pro se brief. We affirm in part, vacate the sentence for second-degree assault, and grant in part the motion to strike.

## FACTS

William Henry Brown entered a convenience store and told the clerk, Judy Matusovic, that he wanted to buy two cases of Similac infant formula. When Matusovic set the cases of Similac on the counter, Brown grabbed them and ran outside. Thomas Majerus, an owner of the store, ran after Brown and caught up with him five to ten seconds later after Brown threw the Similac into his car and stopped to open his car door. Majerus grabbed Brown and was pulled into the car as Brown entered it. Brown ended up lying across both front seats with his head on the passenger seat. Majerus was lying on Brown, holding him. Brown started the car, jammed it into gear, and pushed the gas pedal with his hand. As the car moved away, Matusovic saw Majerus's feet dragging from the open car door.

Looking over the dashboard, Majerus saw that the car was approaching a barricade on a freeway overpass. Majerus turned the steering wheel, and the car stopped on the curb of the sidewalk along the overpass, about one and a half blocks from the store. Brown picked up a hammer from the floor of the car and swung it at Majerus. Majerus deflected most of the blow with his arm but was struck on the forehead. Brown also bit Majerus several times.

Christopher Bunn, who was at a bus stop near the store, saw Brown run out of the store with Majerus chasing him. When Brown started the car, Bunn reached through the driver's window to try to remove the keys from the ignition. But when the car moved forward, Bunn pulled his arm away and ran after the car. When the car stopped, Bunn pulled the keys from the ignition. Bunn saw Brown trying to hit Majerus with the hammer and took the hammer away from Brown. While Bunn helped hold Brown until the police arrived, Brown hit Bunn in the nose with his fist.

Brown was charged with one count of first-degree aggravated robbery in violation of Minn.Stat. § 609.245, subd. 1 (1996); one count of second-degree assault in violation of Minn.Stat. § 609.222, subd. 1 (1996); and one count of fifth-degree assault in violation of Minn.Stat. § 609.224, subd. 1 (1996).

The court appointed a public defender to represent Brown. At a pretrial hearing, Brown requested appointment of another attorney. The court refused to appoint another attorney but continued the trial to give Brown time to hire private counsel. A few weeks later, Brown again requested that the court appoint substitute counsel, and the court again refused. At a later hearing to clarify the status of Brown's representation, Brown acknowledged that he wanted to retain his original appointed counsel, who then represented Brown at trial.

The jury found Brown guilty of first-degree aggravated robbery and second-degree assault and not guilty of fifth-degree assault. The trial court sentenced him to concurrent prison terms of 68 months for the first-degree aggravated robbery offense and 39 months for the second-degree assault offense. The court also ordered Brown to submit to an HIV test because Brown had broken Majerus's skin when he bit him.

## ISSUES

1. Is the evidence sufficient to support the conviction for first-degree aggravated robbery?

2. Is second-degree assault a lesser-included offense of first-degree aggravated robbery?

3. Were the second-degree assault and the first-degree aggravated robbery parts of a single behavioral incident?

4. Did the trial court have authority to order Brown to submit to an HIV test?

## ANALYSIS

**1. Sufficiency of the evidence.** When reviewing a claim that the evidence is insufficient to support a conviction, this court reviews the record to determine whether the evidence, viewed most favorably to support a finding of guilt, was sufficient to permit the jury to reach the conclusion that it did. *State v. Martin*, 293 N.W.2d 54, 55 (Minn.1980). We "must assume that the jury believed the state's witnesses and disbelieved any contradictory evidence." *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978).

Brown argues that because the Similac formula was already in his car when Majerus caught up with him, the evidence is insufficient to prove that he used force to take or carry away the formula. He contends that he used force merely to effectuate his escape. We disagree.

Simple robbery is defined as follows:

**Whoever, having knowledge of not being entitled thereto, takes personal property** from the person or **in the presence of another and uses** or threatens the imminent use of **force against any person to overcome the person's resistance or powers of resistance to,** or to compel acquiescence in, **the taking or carrying away of the property** is guilty of robbery and may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $20,000, or both.

Minn.Stat. § 609.24 (1996) (emphasis added). First-degree aggravated robbery is defined as follows:

**Whoever, while committing a robbery,** is armed with a dangerous weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon, or **inflicts bodily harm upon another,** is guilty of aggravated robbery in the first degree·and may be sentenced to imprisonment for not more than 20 years or to payment of a fine of not more than $35,000, or both.

Minn.Stat. § 609.245, subd. 1 (1996) (emphasis added).

In *State v. Kvale*, 302 N.W.2d 650, 651–52 (Minn.1981), the defendant argued that even though he took the victim's money and cut the victim's throat, there was no robbery because he did not use force to facilitate the taking. The defendant contended that because the evidence demonstrated that he cut the victim's throat after he had already taken the money, there was only a taking that did not amount to a robbery, followed by an unrelated assault. *Id.* at 652. The supreme court acknowledged "that the use of force in escaping only was insufficient to constitute robbery because it is clear from the statute that one must do more than merely use force to escape with stolen property to commit robbery." *Id.* at 652–53. But the court affirmed the aggravated robbery conviction because the threat of force preceded the taking and the force used to inflict bodily harm "overcame the victim's power to resist and compelled his acquiescence both in the completed taking and in the contemporaneous carrying away of the money." *Id.* at 653.

The court explained:

The robbery statute speaks of using force or threats to compel acquiescence in either the taking or the carrying away of the property. It does not require that the use of force or threats actually precede or accompany the taking. It requires only that the use of force or threats precede or accompany either the taking or the carrying away and that the force or threats be used to overcome the

victim's resistance or compel his acquiescence in the taking or carrying away. *Id.*

Brown struck Majerus with the hammer and bit him after Majerus pursued Brown to stop him from carrying away the Similac. Because Brown was attempting to drive away with the Similac in his car, the jury could reasonably conclude that his use of force accompanied the carrying away of the Similac and was intended to overcome Majerus's resistance to the carrying away. The evidence is sufficient to sustain the conviction for first-degree aggravated robbery.

■■■ **2. Conviction for second-degree assault.** Brown contends that his conviction for second-degree assault must be vacated because second-degree assault is a lesser-included offense of first-degree aggravated robbery. We disagree.

> Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both. An included offense may be any of the following: \* \* \*
>
> (4) A crime necessarily proved if the crime charged were proved[.]

Minn.Stat. § 609.04, subd. 1 (1996). In determining whether an offense is a necessarily included offense, a reviewing court looks at the elements of the offense rather than at the facts of the particular case. *State v. Roden*, 384 N.W.2d 456, 457 (Minn.1986). If it is impossible to commit the greater offense without also committing the lesser offense, the lesser offense is necessarily included in the greater offense. *Id.*

Second-degree assault is defined as follows:

> **Whoever assaults another with a dangerous weapon** may be sentenced to imprisonment for not more than seven years or to payment of a fine of not more than $14,000, or both.

Minn.Stat. § 609.222, subd. 1 (1996) (emphasis added). As we have already stated,

first-degree aggravated robbery is defined as follows:

> **Whoever, while committing a robbery,** is armed with a dangerous weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon, or **inflicts bodily harm upon another,** is guilty of aggravated robbery in the first degree and may be sentenced to imprisonment for not more than 20 years or to payment of a fine of not more than $35,000, or both.

Minn.Stat. § 609.245, subd. 1 (emphasis added).

■■■ Use of a dangerous weapon is an element of second-degree assault. But it is not necessary to use a dangerous weapon to commit first-degree aggravated robbery. Inflicting bodily harm upon another by any means while committing a robbery constitutes first-degree aggravated robbery. Therefore, it is possible to commit first-degree aggravated robbery without also committing second-degree assault, and second-degree assault is not a lesser-included offense of first-degree aggravated robbery.

We recognize that in *State v. Bobo*, 414 N.W.2d 490, 494 (Minn.App.1987), *review denied* (Minn. Dec. 22, 1987), this court stated that second-degree assault is a lesser-included offense of aggravated robbery. But this court's opinion in *Bobo* did not include any analysis of the elements of either offense, so we are unable to determine the basis for the conclusion that second-degree assault is a lesser-included offense of aggravated robbery. For that reason and because it is possible to commit first-degree aggravated robbery without also committing second-degree assault, we decline to follow *Bobo*. Brown is not entitled to have his second-degree assault conviction vacated as a lesser-included offense of first-degree aggravated robbery.

**3. Sentence for second-degree assault.**

[I]f a person's conduct constitutes more than one offense under the laws of this

state, the person may be punished for only one of the offenses[.]

Minn.Stat. § 609.035, subd. 1 (Supp.1997).

The purpose of [Minn.Stat. § 609.035] is "to limit punishment to a single sentence where a single behavioral incident result[s] in the violation of more than one criminal statute." Thus, if a defendant commits multiple offenses against the same victim during a single behavioral incident, Minn.Stat. § 609.035 provides that the defendant may be sentenced for only one of those offenses.

*State v. Bookwalter*, 541 N.W.2d 290, 293 (Minn.1995) (quoting Minn.Stat. Ann. § 609.035 advisory comm. cmt. (West 1987)) (alteration in original) (footnote omitted).

"Multiple punishment 'refers not to multiple convictions but multiple sentences and any multiple sentences, including concurrent sentences, are barred if section 609.035 applies.'"

*Id.* (quoting *State v. Boley*, 299 N.W.2d 924, 925 (Minn.1980)).

■ In determining whether intentional crimes are part of a single behavioral incident, a court focuses on the factors of time and place and considers whether the segments of conduct were motivated by a desire to obtain a single criminal objective. *State v. Johnson*, 273 Minn. 394, 404, 141 N.W.2d 517, 524 (1966).

■ The state concedes that because the assault and the aggravated robbery occurred at the same time and place and were motivated by a desire to obtain the single criminal objective of carrying away the Similac, they were parts of a single behavioral incident, and the trial court erred by sentencing Brown for both offenses. We, therefore, vacate the concurrent sentence for second-degree assault.

■ **4. Authority to order HIV test as part of sentencing.** Because Brown broke Majerus's skin when he bit him, the trial court ordered Brown to submit to a blood test for HIV. Brown argues that the trial court lacked authority under Minn. Stat. § 609.10, subd. 1 (Supp.1997) to order him to submit to this test. But the test has already been administered. "Courts are designed to decide actual controversies." *In re Application of Minnegasco*, 565 N.W.2d 706, 710 (Minn.1997).

[W]hen, pending appeal, an event occurs that makes a decision on the merits unnecessary or an award of effective relief impossible, the appeal should be dismissed as moot.

*Id.* Because the test has already been administered, and we are unable to grant effective relief, the issue is moot, and we do not address it.

■ **5. Pro se issues.** The state moves to strike all the documents appended to Brown's pro se brief. "The record on appeal shall consist of the papers filed in the trial court, the offered exhibits, and the transcript of the proceedings, if any." Minn. R.Crim. P. 28.02, subd. 8. An appellate court may not base its decision on matters outside the record on appeal or consider matters that were not produced and received in evidence before the trial court. *Thiele v. Stich*, 425 N.W.2d 580, 582–83 (Minn.1988). But a reviewing court may consider cases, statutes, rules, and publicly available legal resources that were not presented to the trial court. *Fairview Hosp. & Health Care Servs. v. St. Paul Fire & Marine Ins. Co.*, 535 N.W.2d 337, 340 n. 3 (Minn.1995); *Sylvester Bros. Dev. Co. v. Great Cent. Ins. Co.*, 480 N.W.2d 368, 376–77 (Minn.App.1992), *review denied* (Minn. Mar. 26, 1992). Our review of the district court file indicates that of the items appended to Brown's pro se brief, only the photographs of Brown and Majerus were presented to the trial court. Also, the appendix includes an excerpt from an American Bar Association publication, Standard for Criminal Justice, which is part of a publicly available legal resource. Accordingly, we grant the state's motion to strike all of the documents appended to Brown's pro se brief, except the photographs and the excerpt

from the American Bar Association publication.

In his pro se brief, Brown argues that his counsel's preparation for trial was ineffective because counsel did not (1) discuss the case with him before trial, (2) conduct any kind of investigation, or (3) assert pretrial issues. Brown also argues that his counsel's performance at trial was ineffective because counsel (1) did not make a self-defense argument and (2) conceded during closing argument that Brown may have possessed a weapon.

 A defendant who seeks a new trial on the ground of ineffective assistance of counsel

> must affirmatively prove that his counsel's representation "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Gates v. State*, 398 N.W.2d 558, 561 (Minn. 1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984)).

It is not necessary to decide whether Brown met his burden of proving that his counsel's representation fell below an objective standard of reasonableness because we conclude that he failed to meet his burden of proving that there is a reasonable probability that the outcome of his trial would have been different had counsel not made any of the alleged professional errors.

 Brown has not demonstrated that his counsel's failure to discuss the case with him before trial or to assert pretrial issues had any effect on the outcome of his trial. He has not described any information that he could have provided to counsel nor identified any pretrial issues that should have been raised. And he has not demonstrated that any kind of investigation would have changed the outcome of the trial.

> [I]t is not proper under *Strickland* to base a reversal on speculation that an investigation might have found someone who would have helped defendant's case. Rather, defendant had an affirmative burden to actually show that someone would have been found by [defense counsel] and that that witness' testimony probably would have made a difference[.]

*Id.* at 563. Brown has not demonstrated that an investigation would have produced a witness whose testimony would have changed the outcome of his trial.

 Brown has also failed to demonstrate that there is a reasonable probability that the outcome of his trial would have been different if his counsel had asserted a self-defense claim at trial or had not conceded during closing argument that Brown may have possessed a weapon.

> The elements of self-defense in a criminal case are (1) the absence of aggression or provocation on the part of the defendant; (2) the defendant's actual and honest belief that he or she was in imminent danger of death or great bodily harm and that the action taken was necessary to avert that danger; (3) the existence of reasonable grounds for that belief; and (4) the absence of a reasonable possibility of retreat to avoid the danger.

*State v. McKissic*, 415 N.W.2d 341, 344 (Minn.App.1987).

 Given the evidence that was presented at trial, it is not reasonably probable that the jury would have concluded that there was no aggression or provocation on the part of Brown in his struggle with Majerus. Nor is it reasonably probable that the jury would have concluded that there were reasonable grounds for Brown to believe that it was necessary to strike Majerus with a hammer and bite him to avert imminent danger of death or great bodily harm.

 Finally, both Majerus and Bunn testified that Brown held a hammer in his hand. Given this testimony, it is not reasonably probable that counsel's concession

that Brown may have possessed a weapon affected the outcome of the case.

Brown also argues that the trial court erred by not granting his request for appointment of substitute counsel. We disagree.

> [T]he right of an indigent to have counsel does not give him the unbridled right to be represented by counsel of his own choosing. The court is obligated to furnish an indigent with a capable attorney, but he must accept the court's appointee. Although he may ask for a substitution, his request will be granted only if exceptional circumstances exist and the demand seems reasonable.

*State v. Fagerstrom,* 286 Minn. 295, 299, 176 N.W.2d 261, 264 (1970). Although Brown was dissatisfied with his court-appointed attorney, no exceptional circumstances existed that required the trial court to appoint substitute counsel.

## D E C I S I O N

The evidence was sufficient to sustain the conviction for first-degree aggravated robbery. Because second-degree assault is not a lesser-included offense of first-degree aggravated robbery, Brown is not entitled to have the second-degree assault conviction vacated. Because the first-degree aggravated robbery and the second-degree assault were parts of a single behavioral incident, the separate, concurrent sentence for second-degree assault is vacated. Whether the trial court had authority to order Brown to submit to an HIV test is a moot issue. Brown has not demonstrated that there is a reasonable probability that the outcome of his trial would have been different if his counsel had not committed alleged professional errors. The district court did not err in refusing to appoint substitute counsel.

**Affirmed in part; sentence for second-degree assault vacated; motion to strike granted in part.**