*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0843**

State of Minnesota,
Respondent,

vs.

Joseph Cody Morrison,
Appellant.

**Filed March 16, 2015
Affirmed in part, reversed in part, and remanded
Larkin, Judge**

Hennepin County District Court
File No. 27-CR-13-22388

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant
County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness,
Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Johnson, Judge; and
Larkin, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges his conviction of aiding and abetting first-degree aggravated robbery, arguing that the evidence is insufficient to sustain his conviction. He also argues that his warrant of commitment should be corrected to reflect that he was not adjudicated guilty and sentenced on the offense of aiding and abetting third-degree assault. Because the evidence is sufficient to sustain appellant's aggravated-robbery conviction, and because Minn. Stat. § 609.04 (2012) does not bar multiple convictions for aggravated robbery and third-degree assault, we affirm appellant's convictions. But we reverse appellant's sentence for the third-degree assault under Minn. Stat. § 609.035 (2012) and remand to the district court with instructions to vacate that sentence.

## FACTS

In June 2013, a group of four individuals attacked and robbed a man outside a home in Minneapolis. The victim of the crime, J.T., identified appellant Joseph Cody Morrison as one of the assailants. The state charged Morrison with aiding and abetting first-degree aggravated robbery and aiding and abetting third-degree assault, and the case was tried to a jury.

J.T. testified that around 3:30 a.m. on June 23, he arrived at the home of S.B., his girlfriend. S.B.'s brother, H.O., was standing outside the front door, and four men were behind him. J.T. asked if S.B. was home. The four men surrounded J.T. and began hitting him. One struck J.T. "really hard," and J.T. fell to the ground. The group continued to hit and kick J.T. "all over [his] body." J.T. testified that while two of the

2

men grabbed his arms, the other two grabbed his legs, removed his shorts, and stole his money, credit card, and cell phone. J.T. passed out after being struck on his head.

When J.T. woke up, he ran and screamed for help. Someone called the police, and an ambulance arrived and took J.T. to a hospital. His two front teeth were broken, his lips were bloody, and his body was covered in bruises. He also sustained brain damage. During an interview two weeks after the robbery, J.T. told Sergeant Jesse Garcia of the Minneapolis Police Department that he could identify his attackers if he saw them again. Sergeant Garcia showed J.T. several photo lineups, and J.T. picked Morrison from one of the lineups.

At trial, J.T. identified Morrison as one of the men who attacked him. He stated that Morrison "was on the right of the people who had surrounded [him]" and was one of two taller men present. J.T. testified that he "feared for [his] life" at the time of the robbery.

H.O. also testified. He stated that he was at his home on the morning of June 23. S.B. lived there, but she was not home at the time. A group of four individuals, including Morrison, were drinking outside of H.O.'s house. When J.T. arrived around 3:30 a.m., H.O. told him that S.B. was not home and went inside. When H.O. went back outside, he saw Morrison and the three other men beating J.T., who at that point was clothed in only his boxers. H.O. saw Morrison kick and punch J.T. H.O. told Sergeant Garcia that Morrison participated in the robbery. H.O. also identified L.R. as one of the individuals who attacked J.T. with Morrison.

3

L.R. testified that he participated in the robbery and that he pleaded guilty. He stated that he was with Morrison, H.O., and two others at S.B.'s house on June 23. J.T. arrived around 3:30 a.m. looking for S.B. L.R. went inside the house, and when he came back outside, he saw J.T. on the ground. L.R. testified that he took J.T.'s wallet, removed the money, threw the wallet on the ground, and ran away. L.R. testified that he did not see Morrison attack J.T. or take any of his belongings.

Sergeant Garcia also testified. He stated that J.T. told him that he could identify the men who robbed him. J.T. also told him that H.O. was present during the robbery. Sergeant Garcia interviewed H.O., who told him that Morrison participated in the robbery. During a subsequent interview at the police station, H.O. again told Sergeant Garcia that he witnessed the robbery and that Morrison participated. Based on this information, Sergeant Garcia assembled photographic lineups and showed them to J.T. J.T. identified Morrison.

After the prosecution rested, Morrison testified on his own behalf. He stated that he was at H.O.'s house on the morning of the crime and that he came outside and saw someone "severely stomping" a man's head "into the ground." Morrison told the assailant to "chill" and grabbed him around the waist, which gave the victim a chance to run away. Morrison stated that he did not witness a robbery. He testified that he did not see L.R. at the scene; he only saw H.O. and the person he stopped from assaulting the victim.

The jury found Morrison guilty of aiding and abetting both first-degree aggravated robbery and third-degree assault. On the warrant of commitment, the district court

indicated that Morrison was adjudicated guilty of both offenses and that his prison sentence was 48 months. The document also included the following handwritten note: "Sentence on [third-degree assault is] 15 months stayed[,] shall merge."

Morrison appeals, arguing that the evidence is insufficient to sustain his conviction of aiding and abetting first-degree aggravated robbery and that the warrant of commitment is incorrect.

**D E C I S I O N**

**I.**

When considering a claim that the evidence is insufficient to support a conviction, "this court thoroughly examines the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict they did." *State v. Crockson*, 854 N.W.2d 244, 247 (Minn. App. 2014), *review denied* (Minn. Dec. 16, 2014). "We assume that the jury believed all of the state's witnesses and disbelieved any evidence to the contrary." *Id.* (quotation omitted). "We will not alter a verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense." *Id.* For determinations of credibility and resolution of conflicting testimony, we defer to the jury. *State v. Lloyd*, 345 N.W.2d 240, 245 (Minn. 1984); *State v. Watkins*, 650 N.W.2d 738, 741 (Minn. App. 2002).

Morrison challenges his conviction of aiding and abetting first-degree aggravated robbery. A person is guilty of robbery if he, with knowledge of his lack of permission,

5

"takes personal property from the person . . . of another and uses . . . force . . . to overcome the person's resistance or powers of resistance to, or to compel acquiescence in, the taking or carrying away of the property." Minn. Stat. § 609.24 (2012). A person is guilty of first-degree aggravated robbery if he "inflicts bodily harm upon another" while committing a robbery. Minn. Stat. § 609.245, subd. 1 (2012). "A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn. Stat. § 609.05, subd. 1 (2012).

"To impose liability under the aiding and abetting statute, the state must show some knowing role in the commission of the crime by a defendant who takes no steps to thwart its completion." *State v. Ostrem*, 535 N.W.2d 916, 924 (Minn. 1995) (quotation omitted). "Mere presence at the scene of a crime does not alone prove that a person aided or abetted, because inaction, knowledge, or passive acquiescence does not rise to the level of criminal culpability." *Id.* "Nevertheless, active participation in the overt act which constitutes the substantive offense is not required, and a person's presence, companionship, and conduct before and after an offense are relevant circumstances from which a person's criminal intent may be inferred." *Id.*

Morrison contends that the state proved only that he "was present" and not that he participated in or otherwise aided the robbery. The record belies his claim. J.T. identified Morrison as one of the men who attacked him. He identified Morrison in a photographic lineup before trial. He also identified Morrison in court at trial, testifying that Morrison was in the group of men who attacked him, beat him, held him down, and

took his property without his consent. Although J.T. did not specifically describe Morrison's actions during the attack, he testified that all four men beat him and held him while his pants were removed and his belongings were taken. Moreover, H.O. told Sergeant Garcia that he saw Morrison participate in the robbery, and he testified during trial that he saw Morrison kick and punch J.T.

Morrison argues that "even if [he] participated in the assault [of J.T.], those actions did not aid and abet the robbery." He contends that the evidence shows that he was "merely present" for the robbery and not that he participated in or aided the robbery. This is not a case of mere presence. Morrison played an active role in the crime; he did not passively acquiesce. *See State v. Crow*, 730 N.W.2d 272, 280 (Minn. 2007) ("Mere presence at the crime scene does not alone prove that a person aided or abetted, because inaction, knowledge, or passive acquiescence do not rise to the level of criminal culpability."). The evidence shows that Morrison held down J.T.'s arm or leg with three other men, while one of them took J.T.'s wallet and phone. Morrison's participation in the assault rendered J.T. helpless and enabled one or more of Morrison's companions to take J.T.'s belongings. This is sufficient evidence of aiding and abetting. *See State v. Parker*, 282 Minn. 343, 355-57, 164 N.W.2d 633, 641-42 (1969) (upholding defendant's conviction for aggravated robbery where defendant "was present during the criminal activity," "did nothing to prevent the offenses committed or the brutal beating which the victim endured," and "must have known of the robbery and made no attempt to stop it"); *State v. Bellecourt*, 277 Minn. 163, 152 N.W.2d 61 (1967) (upholding theft conviction where defendant was part of three-man group that passed the victim a moment before the

7

victim was struck in face, rendered unconscious, and woke up to find his billfold missing).

Morrison further argues that there was "no evidence that [he] knew that the purpose of the assault was to rob the victim." To prove that a defendant is guilty of aiding and abetting, the prosecution must "prove beyond a reasonable doubt that (1) [the defendant] knew his alleged accomplices were going to commit a crime, and that (2) he intended his presence and actions to further the commission of that crime." *State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012). However, liability is expansive under the aiding-and-abetting statute. *See* Minn. Stat. § 609.05, subd. 2 (2012) ("A person liable under subdivision 1 is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by the person as a probable consequence of committing or attempting to commit the crime intended."). The evidence shows that Morrison continued to hold J.T. down while his companions disrobed J.T. and took J.T.'s property without his consent. At that point, Morrison knew that his companions were committing a robbery, and his continued participation proves his intent to further the commission of that crime.

Lastly, Morrison argues that H.O.'s testimony was "suspect" and "questionable." Credibility determinations are within the purview of the jury, not this court. *See Lloyd*, 345 N.W.2d at 245. Morrison otherwise relies on his own testimony and the testimony of L.R. to show that he did not participate in the robbery. The existence of conflicting evidence does not warrant reversal because all inconsistencies in the evidence are resolved in favor of the state when analyzing a challenge to the sufficiency of the

8

evidence. *State v. Budreau*, 641 N.W.2d 919, 929 (Minn. 2002). We view the evidence in the light most favorable to the conviction and assume the jury disbelieved any contradictory evidence. *See Crockson*, 854 N.W.2d at 247.

In sum, the evidence shows that Morrison and three other men assaulted J.T. and held him down while one or more of Morrison's companions took J.T.'s belongings without his permission. Morrison does not dispute that J.T. sustained bodily harm during the assault. The jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that Morrison was guilty of aiding and abetting first-degree aggravated robbery. Accordingly, we do not disturb the verdict.

## II.

Morrison contends that the warrant of commitment contains two "clerical errors" that must be corrected. First, he argues that the warrant incorrectly indicates that he was adjudicated guilty of aiding and abetting third-degree assault. Second, he argues that the warrant incorrectly indicates that he received a stayed sentence for the third-degree assault. Relying on the sentencing transcript, Morrison argues that the district court "did not impose a stayed sentence and did not adjudicate [him] guilty of [third-degree assault]." He asserts that the warrant of commitment "does not accurately reflect the [district] court's sentence" and asks this court to correct the warrant to reflect that he "was not adjudicated guilty of [third-degree assault] and [a third-degree assault] sentence was not stayed."

At Morrison's sentencing hearing, the district court judge stated the following:

> Joseph Cody Morrison, having been found guilty by a jury of your peers of aiding and abetting first-degree aggravated robbery[,] . . . I hereby sentence you to the commissioner of corrections for a period of 48 months. . . .
>
> With respect to [third-degree assault], the presumptive sentence is 15 months. That sentence will be merged with the sentence I just imposed.
>
> . . . .
>
> All of this has been written out on a piece of paper. I'd like you to read it, sign it, and keep a copy for yourself.

The warrant of commitment, which was signed by the district court judge and Morrison at the time of sentencing, states that Morrison was adjudicated guilty of aiding and abetting both first-degree aggravated robbery and third-degree assault. The warrant also states that Morrison was sentenced to "48 months," and it includes a handwritten note stating, "Sentence on [third-degree assault] 15 months stayed[,] shall merge." For the reasons that follow, we reject Morrison's argument that the warrant of commitment does not accurately reflect the district court's sentence.

First, a sentence cannot "merge" unless there is a sentence. Thus, the district court's oral statement and notation in the warrant of commitment that the third-degree assault sentence "will be merged" and "shall merge" show that the district court judge imposed a sentence. Second, the imposition of a sentence presumes a conviction. *See* Minn. Stat. § 609.10, subd. 1(a) (2012) ("*Upon conviction* of a felony and compliance with the other provisions of this chapter the court, if it imposes sentence, may sentence the defendant to the extent authorized by law . . . ." (Emphasis added.)). Thus, even though the district court did not orally announce that it was adjudicating Morrison guilty

10

of aiding and abetting third-degree assault and entering a judgment of conviction on that offense, the district court's imposition of a sentence for that offense implies that the district court did so. *See id.* Third, and most significantly, the district court judge's oral comment that "[a]ll of this has been written out on a piece of paper" for Morrison to sign and its contemporaneous execution of the warrant of commitment stating that Morrison was convicted and sentenced for aiding and abetting third-degree assault documents that which is implicit in the district court's oral statements: the district court entered a judgment of conviction and imposed a stayed sentence on the third-degree-assault offense.

The district court judge's failure to precisely describe his actions on the record is not fatal. This is merely a case of a judge using imprecise language to describe his order for conviction and sentence. *See State v. Pflepsen*, 590 N.W.2d 759, 767 (Minn. 1999) (recognizing that "testimony and statements recorded in hearing and trial transcripts are often imprecise and unclear with respect to sentencing and conviction orders"). It is not a case in which the district court's oral sentence and its written sentencing order are irreconcilable. *See State v. Staloch*, 643 N.W.2d 329, 329-30 (Minn. App. 2002) (noting "the difference between" an oral sentence and a written sentencing order where the oral sentence indicated that 75 days of jail time were "*suspended*" and the written sentencing order indicated that the 75 days were "*stayed*" and holding that "[w]hen an orally pronounced sentence varies from a written sentencing order, the orally pronounced sentence controls"). In sum, the warrant of commitment accurately reflects the district court's sentence.

Nonetheless, Morrison's request raises issues regarding whether the multiple convictions and sentences are permissible. A person "may be convicted of either the crime charged or an included offense, but not both." Minn. Stat. § 609.04, subd. 1. An "included offense" means any of the following:

> (1)　A lesser degree of the same crime; or
> (2)　An attempt to commit the crime charged; or
> (3)　An attempt to commit a lesser degree of the same crime; or
> (4)　A crime necessarily proved if the crime charged were proved; or
> (5)　A petty misdemeanor necessarily proved if the misdemeanor charge were proved.

*Id.*, subd. 1(1)-(5). Morrison was convicted of aiding and abetting both first-degree aggravated robbery and third-degree assault. The only included-offense provision that could apply here is subpart (4), a "crime necessarily proved if the crime charged were proved." *Id.*, subd. 1(4).

"In determining whether an offense is a necessarily included offense [for purposes of section 609.04, subd. 1(4)], a reviewing court looks at the elements of the offense rather than at the facts of the particular case." *State v. Brown*, 597 N.W.2d 299, 304 (Minn. App. 1999), *review denied* (Minn. Sept. 14, 1999). "If it is impossible to commit the greater offense without also committing the lesser offense, the lesser offense is necessarily included in the greater offense." *Id.*

In this case, the greater offense, first-degree aggravated robbery, is defined as follows:

> Whoever, while committing a robbery, is armed with a dangerous weapon or any article used or fashioned in a

12

> manner to lead the victim to reasonably believe it to be a dangerous weapon, *or inflicts bodily harm upon another*, is guilty of aggravated robbery in the first degree . . . .

Minn. Stat. § 609.245, subd. 1 (emphasis added). The lesser offense, third-degree assault, is defined as "assault[ing] another and inflict[ing] substantial bodily harm." Minn. Stat. § 609.223, subd. 1 (2012); *see also* Minn. Stat. § 609.02, subd. 7a (2012) (defining "substantial bodily harm" as "bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily member or organ, or which causes a fracture of any bodily member").

Based on the elements of these offenses, third-degree assault is not a necessarily included offense of first-degree aggravated robbery. A person can commit first-degree aggravated robbery without causing any harm by being "armed with a dangerous weapon," in which case a third-degree assault would not occur. This court previously relied on similar reasoning to conclude that "it is possible to commit first-degree aggravated robbery without also committing second-degree assault, and second-degree assault is not a lesser-included offense of first-degree aggravated robbery." *Brown*, 597 N.W.2d at 304; *see* Minn. Stat. § 609.222 (2012) (defining second-degree assault as "assault[ing] another with a dangerous weapon"). Moreover, even though a person may commit first-degree aggravated robbery by inflicting bodily harm upon another, there is no requirement that the bodily harm be substantial, as is necessary for third-degree assault. Because third-degree assault is not an included offense of first-degree

13

aggravated robbery under section 609.04, Morrison's multiple convictions for aiding and abetting first-degree aggravated robbery and third-degree assault are permissible.

However, whether the district court properly sentenced Morrison for both offenses requires a separate analysis. *See State v. Bookwalter*, 541 N.W.2d 290, 293-94 (Minn. 1995) (distinguishing between prohibitions against multiple convictions and multiple sentences). "[I]f a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses." Minn. Stat. § 609.035, subd. 1. "The purpose of [section 609.035] is to limit punishment to a single sentence where a single behavioral incident results in the violation of more than one criminal statute." *Bookwalter*, 541 N.W.2d at 293 (quotation omitted). "In determining whether intentional crimes are part of a single behavioral incident, a court focuses on the factors of time and place and considers whether the segments of conduct were motivated by a desire to obtain a single criminal objective." *Brown*, 597 N.W.2d at 305.

The state agrees that the offenses occurred during the "same incident," as do we. Morrison's offenses occurred at the same location and time, and they were motivated by a single criminal objective. Because the offenses were committed during a single behavioral incident, Morrison may not be sentenced for both offenses. *See State v. Norregaard*, 384 N.W.2d 449, 450 (Minn. 1986) (holding that section 609.035 prohibited concurrent sentences for aggravated robbery and third-degree assault because defendant "was convicted of the more serious form of robbery and received additional punishment for the robbery because it was a robbery accompanied by the infliction of bodily harm"). Accordingly, we reverse Morrison's 15-month stayed sentence for aiding and abetting

14

third-degree assault and remand for the district court to vacate that sentence. *See Brown*, 597 N.W.2d at 305 (vacating the lesser of two sentences for offenses that were committed during a single behavioral incident).

**Affirmed in part, reversed in part, and remanded.**