*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0294**

State of Minnesota,
Respondent,

vs.

Noor Muhina Salim,
Appellant.

**Filed February 13, 2017
Affirmed in part, reversed in part, and remanded
Bratvold, Judge**

Blue Earth County District Court
File No. 07-CR-15-361

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, Minnesota; and

Patrick McDermott, Blue Earth County Attorney, Mankato, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Julie Loftus Nelson, Assistant State Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Worke, Judge; and Bratvold, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BRATVOLD**, Judge

Appellant challenges his convictions of first-degree aggravated robbery, simple robbery, theft, two counts of fifth-degree assault, and disorderly conduct. Appellant argues

that there is insufficient evidence supporting his first-degree aggravated robbery conviction because he did not inflict bodily harm during commission of the robbery. Because we conclude that the evidence establishes infliction of bodily harm during the carrying away of stolen property, we affirm appellant's first-degree aggravated robbery conviction.

Appellant also argues that his adjudicated convictions of simple robbery, theft, fifth-degree assault, and disorderly conduct must be vacated because they are lesser-included offenses of first-degree aggravated robbery. Because simple robbery, theft, and fifth-degree assault are lesser-included offenses, we reverse and remand to the district court with instructions to vacate the formal adjudicated convictions of those counts, consistent with this opinion. Because disorderly conduct is not a lesser-included offense of first-degree aggravated robbery, we affirm that conviction.

**FACTS**

In November 2014, appellant Noor Salim accompanied A.A. on a road trip from Mankato, Minnesota, to St. Louis, Missouri, so that A.A. could buy a new car. They agreed that, after the trip to St. Louis, A.A. would drive Salim to Fargo, North Dakota, where Salim wanted to visit friends, and the two would later drive back to Mankato together.

The day after arriving in St. Louis, A.A. purchased his new car, and he and Salim traveled to Fargo. As they neared Fargo, Salim demanded that A.A. pay him $600 for accompanying A.A. on the roadtrip, but A.A. refused, saying he never agreed to pay Salim. According to Salim, he was entitled to $600 because he loaned A.A. the money to buy new car tires. A.A. denied that he bought new tires.

After arriving in Fargo, A.A. dropped Salim off at a friend's house. A.A. testified that, because of the "difficult disagreement" about money, he left Salim in Fargo and drove back to Mankato alone. Salim tried calling A.A., but A.A. ignored Salim's phone calls. Salim was forced to take a bus back to Mankato. After returning to Mankato, Salim repeatedly messaged A.A. on his cell phone asking to be paid, but A.A. continued to ignore Salim.

On January 25, 2015, Salim went to A.A.'s apartment to ask for payment. When Salim knocked on the door, A.A., who had been sleeping, let Salim into his apartment. For about 30 minutes, A.A. and Salim argued about money, but they could not agree. A.A. told Salim that he was tired from working the night before and asked Salim to leave his apartment. Salim refused. A.A. said he would call the police. Before A.A. could dial 911, Salim grabbed the cell phone from A.A.'s hand and put it in his pocket.

A.A. immediately asked for his phone back and moved closer to Salim. Salim punched A.A. in the chest, and they fought for approximately 30 minutes. During the fight, A.A. and Salim fell to the ground. The door to A.A.'s apartment was left open and a neighbor heard noise, saw A.A. and Salim on the floor fighting, and A.A. told the neighbor to call the police. As the neighbor began to call the police, Salim hit A.A. and fled the apartment with A.A.'s cell phone in his pocket. As a result of the fight, A.A. had a bruise on his back, and cuts on his knee, elbow, and throat.

Police arrived at A.A.'s apartment within five minutes of the neighbor's 911 call. A.A. did not know Salim's full name, but gave the police directions to Salim's house and Salim's sister's name. The officer searched for possible suspects using a computer

3

database, showed A.A. a photo, and A.A. identified Salim as the person who had assaulted him. The state charged Salim with first-degree aggravated robbery, simple robbery, theft, interference with a 911 call, and two counts of fifth-degree assault. During a two-day jury trial, A.A. and two responding officers testified for the state; Salim's uncle testified for Salim, and Salim testified on his own behalf.

Salim's testimony provided a different account of the events on January 25, 2015. Salim testified that he went to A.A.'s apartment to visit his cousin who lived with A.A. Salim testified that he discussed money with A.A., but A.A. started screaming at him. Salim stated that he tried to leave the apartment, but A.A. stood in his way and then pushed him. Salim testified that, after he pushed A.A., A.A. got on top of him, punched him, and then ran to the kitchen, threatening to stab him with a knife. Salim then fled the apartment. Salim denied taking anything from A.A.'s apartment. Salim admitted that he had not told anyone his version of events before trial.

At the end of the first day of trial, Salim orally moved to amend the complaint to add a disorderly conduct (brawling or fighting) charge under Minn. Stat. § 609.72, subd. 1(1) (2014), which the state did not oppose. On the second day of trial, the state orally moved to amend the complaint to add a charge of temporary theft under Minn. Stat. § 609.52, subd. 2(a)(5) (2014), based on evidence that A.A.'s cell phone was returned to him, which Salim did not oppose. The district court instructed the jury on disorderly conduct and temporary theft, in addition to the six charges in the written complaint.

The jury found Salim guilty of seven counts: (1) first-degree aggravated robbery; (2) simple robbery; (3) interfering with a 911 call; (4) fifth-degree assault with intent to

4

cause fear of immediate bodily harm or death; (5) fifth-degree assault with infliction of bodily harm or attempted infliction of bodily harm; (6) theft; and (7) disorderly conduct (brawling or fighting). Salim was acquitted of temporary theft.

At the sentencing hearing on November 23, 2015, the district court pronounced a sentence only on first-degree aggravated robbery and sentenced Salim to a downward dispositional departure of 48 months in prison, stayed this sentence for 10 years, subject to conditions and a term of probation. The district court filed a written sentencing order entering formal judgments of conviction on all seven counts. This appeal follows.

## D E C I S I O N

### I.    Sufficiency of the Evidence

This court's review of a challenge to the sufficiency of the evidence "is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). This court "will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that [the] defendant was proven guilty of the offense charged." *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn. 2004) (quotation omitted). This court assumes "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). This court generally defers to the factfinder's credibility determinations. *Id.*; *see also State v. Hawes*, 801 N.W.2d

659, 670 (Minn. 2011) ("[T]he jury is in the best position to evaluate the credibility of the evidence.").

The elements of first-degree aggravated robbery are that the defendant: (1) wrongfully took property from the victim; (2) used force or the threat of imminent force to overcome the victim's resistance to, or compel the victim's acquiescence in, the taking or carrying away of the property; and (3) inflicted bodily harm or was armed with a dangerous weapon. Minn. Stat. § 609.24, .245 (2014). Salim concedes that there was sufficient evidence to support a conviction for simple robbery, but argues that the evidence was insufficient to elevate the simple robbery to first-degree aggravated robbery because there was no evidence that he inflicted bodily harm upon A.A. while committing the robbery. Salim argues that the record shows he took A.A.'s cell phone and put it in his pocket *before* he and A.A. began fighting. The state counters, arguing that the bodily harm to A.A. occurred during the "carrying away" of the cell phone. Because it is uncontested that Salim inflicted bodily harm on A.A. during their fight, the issue for this court is whether the timing of the infliction of bodily harm—which occurred after Salim took the cell phone from A.A., but before Salim carried away the cell phone from A.A.'s apartment—is sufficient to sustain the first-degree aggravated robbery conviction.

Minnesota courts have repeatedly held that, to sustain a simple robbery or first-degree aggravated robbery conviction, there must be evidence that the defendant used force or threat of force (for simple robbery) and inflicted bodily harm (for first-degree aggravated robbery) during the taking *or* carrying away of the stolen property. *State v. Kvale*, 302 N.W.2d 650, 652–53 (Minn. 1981); *State v. Brown*, 597 N.W.2d 299, 303–04 (Minn. App.

6

1999), *review denied* (Minn. Sept. 14, 1999); *State v. Burrell*, 506 N.W.2d 34, 36 (Minn. App. 1993), *review denied* (Minn. Oct. 19, 1993).

In *State v. Kvale*, the Minnesota Supreme Court addressed whether evidence of infliction of bodily harm *after* the taking of property could sustain an aggravated robbery conviction. 302 N.W.2d at 652. In *Kvale*, the defendant demanded money from the victim while the victim was in his car. *Id.* at 651. After the victim gave money to the defendant, the defendant hit the victim and cut his throat. *Id.* On appeal, the defendant argued the evidence was insufficient to uphold his aggravated robbery conviction because he first took the money from the victim and then, in "an unrelated assault," inflicted bodily harm on the victim before fleeing with the money. *Id.*

*Kvale* first noted that the legislative history of the simple robbery statute established "that the use of force in escaping [is] insufficient" to uphold a simple robbery conviction. *Id.* at 652. *Kvale* then distinguished the use of force during the carrying away of the property from the use of force to effectuate an escape.

> *The robbery statute speaks of using force or threats to compel acquiescence in either the taking or the carrying away of the property. It does not require that the use of force or threats actually precede or accompany the taking.* It requires only that the use of force or threats precede or accompany either the taking or the carrying away and that the force or threats be used to overcome the victim's resistance or compel his acquiescence in the taking or carrying away.

*Id.* at 653 (emphasis added). Based on this reasoning, *Kvale* upheld the defendant's first-degree aggravated robbery conviction because the infliction of bodily harm occurred during the carrying away of the property. *Id.*

7

This court has applied *Kvale* in two published decisions. First, in *State v. Burrell*, this court addressed whether the use of force after the taking of property was sufficient to uphold a simple robbery conviction. 506 N.W.2d at 36. The defendant in *Burrell* stole seven cigarette cartons from a convenience store. *Id.* at 35. As the defendant left the store and headed to a getaway car, the store owner noticed a carton sticking out of the defendant's coat and ran after the defendant yelling for him to stop. *Id.* A fight ensued during which the defendant injured the store owner. *Id.*

Relying on *Kvale*, the defendant in *Burrell* argued that there was insufficient evidence to sustain a simple robbery conviction because he used force against the store owner during his escape, not during the commission of the robbery. *Id.* at 36. This court rejected the defendant's argument and upheld the simple robbery conviction:

> Appellant's use of force in this case may be viewed as occurring more closely with the "carrying away" of the cigarettes than with an escape. By appellant's own testimony, the entire confrontation took less than one minute; the use of force thus occurred almost immediately after appellant ran outside the store with the cigarettes. Moreover, given [the victim's] version of the events, the jury had ample ground to conclude appellant's actions fit within the "carrying away" provision of the statute.

*Id.*

Similarly, in *State v. Brown*, this court addressed whether the use of force after the taking of property was sufficient to uphold a first-degree aggravated robbery conviction. 597 N.W.2d at 303. In *Brown*, the defendant stole two cases of baby formula from a store, ran out of the store, and threw the formula into his car. *Id.* at 302. Within five or ten

8

seconds, the store owner ran after the defendant, and they fought, during which the defendant inflicted injuries on the store owner. *Id.*

Relying on *Kvale*, the defendant in *Brown* argued that, because the baby formula was already in his car when the store owner ran after him, the infliction of harm occurred during his escape, not during the commission of the robbery. *Id.* at 303. In rejecting the defendant's argument, this court held that, "[b]ecause Brown was attempting to drive away with the [formula] in his car, the jury could reasonably conclude that his use of force accompanied the carrying away of the [formula] and was intended to overcome [the victim's] resistance to the carrying away." *Id.* at 304.

Here, a reasonable jury could conclude that Salim inflicted bodily harm upon A.A. during the "carrying away" of A.A.'s cell phone. A.A. testified that "the fight was over the cell phone." Like the store owners in *Burrell* and *Brown*, A.A. demanded his cell phone back immediately after Salim took it from him. When Salim did not give the phone back, A.A. moved closer to Salim, and Salim punched A.A. in the chest. A.A. and Salim then fought for approximately 30 minutes. Like in *Kvale* and *Brown*, the close temporal relationship between Salim taking the cell phone from A.A., inflicting bodily harm on A.A., and fleeing with the cell phone in his possession is probative evidence that the infliction of bodily harm occurred during the "carrying away" of the cell phone. Viewing the evidence in the light most favorable to the jury verdict, a reasonable jury could conclude that Salim inflicted injury upon A.A. during the "carrying away" of the cell phone. Thus, Salim's insufficiency claim fails.

## II.     Lesser-Included Offenses

Salim argues that his formal adjudicated convictions of simple robbery, theft, fifth-degree assault, and disorderly conduct must be vacated because they are lesser-included offenses of his first-degree aggravated robbery conviction.[1] Salim did not raise this issue in the district court. Generally, this court does not consider issues that were not presented to the district court. *Roby v. State*, 547 N.W.2d 354, 356–57 (Minn. 1996). The supreme court, however, has "held that an appellant does not waive claims of multiple convictions or sentences by failing to raise the issue at the time of sentencing." *Spann v. State*, 740 N.W.2d 570, 573 (Minn. 2007); *see also Ture v. State*, 353 N.W.2d 518, 523 (Minn. 1984) (noting that a defendant cannot waive objection to Double Jeopardy violations). Thus, Salim has not forfeited this issue and we will address the merits.

Whether a crime is a lesser-included offense is a question of law that this court reviews de novo. *State v. Cox*, 820 N.W.2d 540, 552 (Minn. 2012). Minnesota Statutes section 609.04, subdivision 1, provides:

> Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both. An included offense may be any of the following:
> > (1) A lesser degree of the same crime; or
> > (2) An attempt to commit the crime charged; or
> > (3) An attempt to commit a lesser degree of the same crime; or
> > (4) A crime necessarily proved if the crime charged were proved; or
> > (5) A petty misdemeanor necessarily proved if the misdemeanor charge were proved.

---

[1] Salim does not challenge his formal adjudicated conviction of interference with a 911 call.

10

Minn. Stat. § 609.04, subd. 1 (2014).[2]

"To determine whether an offense is an included offense falling under [section 609.04], a court examines the elements of the offense instead of the facts of the particular case." *State v. Mitchell*, 881 N.W.2d 558, 562 (Minn. App. 2016) (alteration in original), *review denied* (Minn. Aug. 23, 2016). "An offense is 'necessarily included' in a greater offense if it is impossible to commit the greater offense without committing the lesser offense." *State v. Bertsch*, 707 N.W.2d 660, 664 (Minn. 2006). A crime is not a lesser included offense if "each crime requires proof of an element that the other does not." *Mitchell*, 881 N.W.2d at 562.

This court must reverse and remand with instructions to vacate a formal adjudicated conviction on a lesser-included offense. *State v. Pflepsen*, 590 N.W.2d 759, 767 (Minn. 1999). In such cases, this court's decision leaves the guilty verdict "in place" in the event that the adjudication of guilt on the greater offense is later vacated. *State v. Crockson*, 854 N.W.2d 244, 248 (Minn. App. 2014) (citing *State v. LaTourelle*, 343 N.W.2d 277, 284 (Minn. 1984)), *review denied* (Minn. Dec. 16, 2014).

The first step in the lesser-included analysis is identifying Salim's convictions. The supreme court has "long recognized that the 'conviction' prohibited by [section 609.04] is not a guilty verdict, but is rather a formal adjudication of guilt." *Pflepsen*, 590 N.W.2d at

---

[2] Minnesota Statutes section 609.04 is distinct from section 609.035, which addresses punishment for multiple convictions. Minn. Stat. § 609.035, subd. 1 (2016). Section 609.035 prohibits "imposition of two separate sentences for convictions involving a single course of conduct." *State v. Jones*, 848 N.W.2d 528, 534 (Minn. 2014). Here, compliance with section 609.035 is not at issue because the district court imposed a sentence only on the greater offense of first-degree aggravated robbery.

767. Appellate courts "typically look to the official judgment of conviction, which generally appears as a separate entry in the file, as conclusive evidence of whether an offense has been formally adjudicated." *Id.*

Here, the district court's November 2015 written sentencing order directs entry of judgment formally adjudicating Salim convicted of first-degree aggravated robbery, simple robbery, theft, interference with a 911 call, two counts of fifth-degree assault, and disorderly conduct (brawling or fighting). The state concedes that simple robbery and theft are lesser-included offenses of first-degree aggravated robbery. But the state argues that Salim's two fifth-degree assault and disorderly conduct convictions should remain adjudicated. We will address each of the four contested adjudications of guilt in turn.

### A.    Simple Robbery

Salim argues, and the state concedes, that simple robbery is a lesser-included offense of first-degree aggravated robbery. We agree. A simple robbery is "necessarily included" in aggravated robbery because "it is impossible to commit" an aggravated robbery without committing a simple robbery. *Bertsch*, 707 N.W.2d at 664; *see State v. Oksanen*, 276 Minn. 103, 105–06, 149 N.W.2d 27, 29 (1967) ("[O]ne must be guilty of simple robbery before one can be guilty of aggravated robbery. It is thus clear that simple robbery is a lesser and included offense within the crime of aggravated robbery."). Accordingly, we reverse Salim's adjudicated conviction of simple robbery and remand to the district court with instructions to issue an order vacating the adjudicated conviction consistent with this opinion.

**B.    Theft**

Salim argues, and the state concedes, that theft is a lesser-included offense of first-degree aggravated robbery. We agree. It is well-established in Minnesota caselaw that theft is a lesser-included offense of aggravated robbery. *State v. Coleman*, 373 N.W.2d 777, 781 (Minn. 1985); *see also State v. McClenton*, 781 N.W.2d 181, 187–88 (Minn. App. 2010), *review denied* (Minn. June 29, 2010) (applying *Coleman*).[3] Accordingly, we reverse Salim's adjudicated conviction of theft and remand to the district court with instructions to issue an order vacating the adjudicated conviction consistent with this opinion.

**C.    Fifth-Degree Assault**

Fifth-degree assault is defined as: "Whoever does any of the following commits an assault and is guilty of a misdemeanor: (1) commits an act with intent to cause fear in another of immediate bodily harm or death; or (2) intentionally inflicts or attempts to inflict bodily harm upon another." Minn. Stat. § 609.224, subd.1 (2014). Salim was convicted of two counts of fifth-degree assault.

Salim argues that, because fifth-degree assault is a lesser-included offense of simple robbery, it is also a lesser-included offense of first-degree aggravated robbery. The state counters, arguing that fifth-degree assault is not a lesser-included offense of aggravated

---

[3] We note that the issues in *Coleman* and *McClenton* were whether the district court erred in declining to instruct the jury on a lesser-included offense of the charged offense. *Coleman*, 373 N.W.2d at 780; *McClenton*, 781 N.W.2d at 186–87. In contrast, this case concerns whether Salim's adjudicated convictions should be vacated as impermissible lesser-included offenses of a greater adjudicated conviction. Nonetheless, *Coleman* and *McClenton* are apposite because they apply Minn. Stat. § 609.04, subd. 1, and use the same analysis for determining a lesser-included offense.

robbery because "fifth-degree assault has elements that are not required for a robbery conviction."

For support, Salim relies on *State v. Stanifer*, in which this court held that fifth-degree assault is a lesser-included offense of simple robbery. 382 N.W.2d 213, 220 (Minn. App. 1986). *Stanifer* reasoned "that proof of the use or threatened imminent use of force against a person in a prosecution for simple robbery necessarily proves a fifth-degree assault, as that crime is statutorily defined. Simple robbery is basically a theft accomplished by means of an assaultive act." *Id.* (quotation omitted). Additionally, as already discussed, caselaw establishes that first-degree aggravated robbery without a theft is an assault. *Coleman*, 373 N.W.2d at 781; *McClenton*, 781 N.W.2d at 187–88. Accordingly, *Stanifer*, *Coleman*, and *McClenton* support Salim's position that fifth-degree assault is a lesser-included offense of first-degree aggravated robbery.

The state contends that *Stanifer* should be overruled because "the elements of a simple robbery do not include either (1) intending to cause fear in another of immediate bodily harm or death, or (2) intentionally inflicting or attempting to inflict bodily harm." In sum, the state contends that force can be used without intending to inflict harm or intending to create fear of immediate bodily harm. The state relies on the *Stanifer* dissenting opinion, which stated that "the force required for simple robbery does not necessarily constitute an assault." *Stanifer*, 382 N.W.2d at 220 (Foley, J., concurring in part, dissenting in part). The dissent reasoned that "[t]he force required in robbery must only be enough to acquire another's property from their person *or* presence, while the force

14

required in the assault must intend or cause another to fear immediate[] bodily harm." *Id.*[4]

This court will overrule its own precedent only if provided with "a compelling reason" to do so. *State v. Martin*, 773 N.W.2d 89, 98 (Minn. 2009). "We are extremely reluctant to overrule our precedent under principles of stare decisis." *Id.* (quotation omitted).

The state's argument that *Stanifer* should be overruled is not persuasive for two reasons. First, since *Stanifer* was decided in 1986, it has not been called into question by any subsequent decision of this court or the supreme court. Notably, this court relied on *Stanifer* in a published decision as recently as 2010 in *McClenton*, 781 N.W.2d at 188.

Second, this case is unlike *Stanifer*, where the greater offense was simple robbery because Salim's greater offense is first-degree aggravated robbery. The state does not provide a compelling reason why this case, which involves a different greater offense, is the appropriate case for overruling *Stanifer*. Importantly, the state fails to address *Coleman* and *McClenton*, which expressly held that first-degree aggravated robbery is an assault plus a theft. *Coleman*, 373 N.W.2d at 781; *McClenton*, 781 N.W.2d at 187–88. Because *Stanifer-Coleman-McClenton* establish that fifth-degree assault is a lesser-included offense of simple robbery, and simple robbery is a lesser-included offense of aggravated robbery, we conclude that a person cannot commit a first-degree aggravated robbery involving

---

[4] The *Stanifer* dissent relied on an advisory committee comment to the simple robbery statute. 382 N.W.2d at 220. The comment provides illustrations of "use of force" sufficient to support a simple robbery conviction, including "[t]he defendant knocks the victim unconscious and then takes his wallet"; "[t]he defendant pushes the victim against a wall and takes his wallet"; and "[t]he defendant points a gun at victim and either demands his wallet or takes it from him." Minn. Stat. § 609.24 advisory cmt. In Salim's appeal, the state argues that these illustrations show that "fifth-degree assault has elements that are not required for a robbery conviction."

infliction of bodily harm without committing an assault. Accordingly, we decline to overrule *Stanifer*.

Following *Stanifer*, *Coleman*, and *McClenton*, we conclude that fifth-degree assault is a lesser-included offense of first-degree aggravated robbery involving infliction of bodily harm. We reverse both of Salim's adjudicated convictions of fifth-degree assault and remand to the district court with instructions to issue an order vacating the adjudicated convictions consistent with this opinion.

### D.    Disorderly Conduct

Salim was convicted of disorderly conduct under Minn. Stat. § 609.72, subd. 1(1):

> Whoever does any of the following in a public or private place, including on a school bus, knowing, or having reasonable grounds to know that it will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace, is guilty of disorderly conduct, which is a misdemeanor:
>
>     (1) engages in brawling or fighting.

Minn. Stat. § 609.72, subd. 1(1) (2014).

Salim argues that disorderly conduct (brawling or fighting) is a lesser-included offense of first-degree aggravated robbery. His argument is multi-pronged. Salim contends that: (1) disorderly conduct (brawling and fighting) is a lesser-included offense of fifth-degree assault involving infliction of bodily harm; (2) fifth-degree assault is a lesser-included offense of simple robbery; and (3) simple robbery is a lesser-included offense of first-degree aggravated robbery.

As discussed above, the second and third prongs of Salim's argument are accurate statements of law. Thus, we consider whether disorderly conduct (brawling and fighting)

16

is a lesser-included offense of fifth-degree assault involving infliction of bodily harm. Without citing legal authority, Salim contends that "[b]rawling and fighting is surely the intentional infliction of bodily harm," and, therefore, it is a lesser-included offense of fifth-degree assault. The state argues that "brawling does not necessarily involve any physical fighting."

Salim's argument lacks merit because he focuses on one element of disorderly conduct—brawling or fighting—but ignores that disorderly conduct also requires knowledge that the defendant's conduct "will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace." Minn. Stat. § 609.72, subd. 1(1). The knowledge requirement in the disorderly conduct statute is not part of the fifth-degree assault statute. Because disorderly conduct requires proof of an element that fifth-degree assault does not, disorderly conduct is not a lesser-included offense of fifth-degree assault.

In conclusion, for the reasons stated, we affirm the formal adjudicated convictions of first-degree aggravated robbery and disorderly conduct. We reverse the formal adjudicated convictions of simple robbery, theft, and both adjudicated convictions of fifth-degree assault, and remand to the district court with instructions to issue an order vacating the adjudicated convictions consistent with this opinion. Because Salim did not challenge his conviction of interfering with a 911 call, we leave that conviction undisturbed.

**Affirmed in part, reversed in part, and remanded.**